# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

NAVY SEAL 1, United States Navy, NAVY )
SEAL 2, United States Navy, EOD OFFICER, )
United States Navy, SENIOR CHIEF PETTY )
OFFICER, United States Navy, CHAPLAIN, )
United States Navy, LIEUTENANT COLONEL )    Case No. _____
1, United States Marine Corps, LIEUTENANT )
COLONEL 2, United States Marine Corps, )
MAJOR, United States Marine Corps, SECOND )
LIEUTENANT, United States Marine Corps, )
CAPTAIN, United States Marine Corps, ARMY )
RANGER, United States Army, LANCE )
CORPORAL 1, United States Marine Corps, )
LANCE CORPORAL 2, United States Marine )
Corps, MAJOR, United States Air Force, )
NATIONAL GUARDSMAN, Virginia Army )
National Guard, COAST GUARD )
LIEUTENANT, United States Coast Guard, )
COLONEL, United States Army, TECHNICAL )
SERGEANT, United States Air Force, DEFENSE )
DEPARTMENT CONTRACTOR, United States )
Department of Defense, FEDERAL CIVILIAN )
ENGINEER CONTRACTOR, FEDERAL )
CIVILIAN CONTRACTOR EMPLOYER, )
FEDERAL NUCLEAR CONTRACTOR )
EMPLOYEE, DEPARTMENT OF ENERGY )
CIVILIAN NUCLEAR TECH, for themselves )
and all others similarly situated, )
                                        )
                Plaintiffs, )
v.                                      )
                                        )
JOSEPH R. BIDEN, in his official capacity as )
President of the United States, LLOYD AUSTIN, )
in his official capacity as Secretary of the United )
States Department of Defense, and ALEJANDRO )
MAYORKAS, in his official capacity as Secretary )
of the Department of Homeland Security, )
                                        )
                Defendants. )

## VERIFIED CLASS ACTION COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY RELIEF

"**Our citizens in uniform may not be stripped of basic rights
simply because they doffed their civilian clothes.**"[1]

For their VERIFIED CLASS ACTION COMPLAINT against Defendants, JOSEPH R. BIDEN, in his official capacity as President of the United States, LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, and ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, Plaintiffs, NAVY SEAL 1, United States Navy, NAVY SEAL 2, United States Navy, NAVY EOD OFFICER, United States Navy, CHIEF PETTY OFFICER, United States Navy, CHAPLAIN, United States Navy, LIEUTENANT COLONEL 1, United States Marine Corps, LIEUTENANT COLONEL 2, United States Marine Corps, SECOND LIEUTENANT, United States Marine Corps, MAJOR, United States Marine Corps, CAPTAIN, United States Marine Corps, ARMY RANGER, United States Army, LANCE CORPORAL 1, United States Marine Corps, LANCE CORPORAL 2, United States Marine Corps, MAJOR, UNITED STATES AIR FORCE, NATIONAL GUARDSMAN, Virginia Army National Guard, LIEUTENANT, United States Coast Guard,  COLONEL, United States Army, TECHNICAL SERGEANT, United States Air Force, DEFENSE DEPARTMENT CONTRACTOR, United States Department of

---

[1]    *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (citing E. Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 188 (1962)).

Defense, FEDERAL CIVILIAN ENGINEER CONTRACTOR, FEDERAL CIVILIAN CONTRACTOR EMPLOYER, FEDERAL NUCLEAR CONTRACTOR EMPLOYEE, DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH, for themselves and all others similarly situated, (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege and aver as follows:

## URGENCIES JUSTIFYING EMERGENCY RELIEF

**"The Executive Order mandating vaccinations
for all federal employees has provided clear direction. . . .
Frankly, if you are not vaccinated, you will not work for the U.S. Navy."[2]**

1.      Plaintiffs are United States Armed Forces servicemembers, federal employees, and federal civilian contractors who face a deadline under the Federal COVID-19 Vaccine Mandate to receive a COVID-19 vaccine that violates their sincerely held religious beliefs, and have been refused any religious exemption or accommodation. United States Navy and United States Marine Corps servicemembers have until November 28 to become fully vaccinated. United States Army and United States Air Force servicemembers have until December 15. United States Coast Guard servicemembers have until November 22. And civilian federal employees and contractors have until November 22. **These are the terminal dates after which**

---

[2]      Vice Admiral William Galinis, Commander, Naval Sea Systems Command (NAVSEA), *ALL HANDS NOTE (10/14/2021) COMNAVSEA Vaccination Message* (Oct. 14, 2021) (warning entire command, comprising more than 85,000 civilian and military personnel).

**discipline will unquestionably be imposed, but the effective due date for the one-dose Johnson and Johnson (J&J) shot is earlier, and earlier still for the first of two Pfizer or Moderna shots. Missing the earlier due dates will necessarily result in discipline at the terminal dates. Moreover, the pressure and abuse are intense, and disciplinary actions have already commenced for some.** Relief is needed now to prevent these military heroes, federal employees, and federal contractors from facing punishments including dishonorable discharge, court martial, other life-altering disciplinary procedures, and termination.

2.      "Greater love hath no man than this, that a man lay down his life for his friends." *John* 15:13 (KJV). Servicemember Plaintiffs have all agreed, voluntarily and sacrificially, to devote their entire lives by this axiomatic truth, regardless of the cost to them personally or to their families who likewise sacrifice in defense of this Nation. They all have sworn an oath to protect and defend the Constitution of the United States, to sacrificially lay down their lives for their fellow citizens against enemies both foreign and domestic, and to preserve for our progeny the heritage and treasure passed down to them by Veterans of old. And, for that ultimate sacrifice in defense of the Constitution and our freedoms, **Defendants are threatening these military heroes with dishonorable discharge for even requesting a religious exemption from the COVID-19 shots. Dishonorable discharge is worse than criminal conviction for these servicemembers because it is a badge of disgrace that follows them for the rest of their lives**. *Having sacrificed everything to defend America and its citizenry—and while*

*carrying the images and sounds of war with them throughout their lives—America, the "land of the free and the home of the brave," would betray them with the worst punishment of dishonorable discharge. And for what cause? Simply because they seek an accommodation from the COVID-19 shots on account of their sincerely held religious beliefs.*

3.     **The deadlines for servicemember Plaintiffs to receive the COVID-19 shots are fast approaching in October and November**. *No servicemembers should be forced to choose between dishonorable discharge by the Nation they love or sinning against God by violating their sincere religious beliefs (which, by the way, can be easily accommodated)*. **This Court must protect the rights of these military heroes and remove from the Republic the stain of government coercion of conscience**.

4.     As the Supreme Court has long affirmed, **the heroes of the United States Armed Forces do not shed their constitutional rights at the moment of their sacrificial oath**. Indeed, "[t]his Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983).

5.     Moreover, while servicemembers certainly have duties and responsibilities "without counterpart in civilian life," *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975), **the Constitution still provides them with the same blanket of constitutional protection that their dedicated service and sacrifice provide to the average civilian**. For to turn the same Constitution that United States Armed Forces

members protect and defend into a weapon against them would be a travesty unknown to the Nation's founding charter and eclipse any dereliction of duty heretofore seen in the great experiment of America. Indeed, as Justice Brennan noted,

> Military (or national) security is a weighty interest, not least of all because national survival is an indispensable condition of national liberties. But the concept of military necessity is seductively broad, and has a dangerous plasticity. **Because they invariably have the visage of overriding importance, there is always a temptation to invoke security "necessities" to justify an encroachment upon civil liberties. For that reason, the military-security argument must be approached with a healthy skepticism: its very gravity counsels that courts be cautious when military necessity is invoked by the Government to justify a trespass on First Amendment rights.**

*Brown v. Glines*, 444 U.S. 348, 369 (1980) (Brennan, J., dissenting) (emphasis added) (citation omitted).

6.    As he continued,

> To be sure, generals and admirals, not federal judges, are expert about military needs. **But it is equally true that judges, not military officers, possess the competence and authority to interpret and apply the First Amendment.** Moreover, in the context of this case, the expertise of military officials is, to a great degree, tainted by the natural self-interest that inevitably influences their exercise of the power to control expression. Partiality must be expected when government authorities censor the views of subordinates, especially if those views are critical of the censors. **Larger, but vaguely defined, interests in discipline or military efficiency may all too easily become identified with officials' personal or bureaucratic preferences. This Court abdicates its responsibility to safeguard free expression when it reflexively bows before the shibboleth of military necessity.**

*Id.* at 370.

7.      Servicemembers who protect the constitutional freedoms cherished in this Nation can also invoke those same constitutional protections for breaches of their own liberties, despite military service. Here, Defendants have made it clear that they think servicemember Plaintiffs' sacrificial act of swearing an oath to protect the Nation and support and defend the Constitution is accompanied by the sacrificial surrender of those same constitutional protections they defend. The Constitution opposes such callous indifference to sacrificial service, and so, too, should this Court. Indeed, "military life do[es] not, of course, render entirely nugatory in the military context the guarantees of the First Amendment." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). *See also Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir. 1976) (**"[T]he military is subject to the Bill of Rights and its constitutional implications**." (emphasis added)). Put simply, "although First Amendment rights . . . may be 'less' for a soldier than a civilian, they are by no means lost to him." *Anderson v. Laird*, 466 F.2d 283, 295 (D.C. Cir. 1972). "**Individual freedom may not be sacrificed to military interests to the point that constitutional rights are abolished**." *Id.* (emphasis added).

8.      Servicemember Plaintiffs and all those dedicated members of the United States Armed Forces voluntarily and sacrificially answered their Nation's call to defend the freedoms we enjoy. Yet, Defendants are demanding that these brave military members sacrifice their constitutional rights which they risk their lives to defend. Indeed, "**[i]t is a basic tenet of our legal system that a government agency is**

**not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription**." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (emphasis added) (citation omitted). For without question, when critical constitutional rights are at issue, "the Supreme Court [has] heard numerous constitutional challenges to military policies." *Singh v. Carter*, 168 F. Supp. 3d 216, 225 (D.D.C. 2016) (cleaned up).

9.    As the Supreme Court held just last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). When we have demanded so much of our Soldiers, Sailors, Airmen, and Marines, we owe them nothing less than the full measure of our own devotion and commitment to constitutional principles. Anything less would be desecrating the sacrifices these heroes have made for untold numbers of people when the call of duty demanded it, and would trample upon the graves of so many who made the ultimate sacrifice before them.

10.    When the great American experiment was commenced, our Founders ordained and established the Constitution—including all of the rights it recognized and enshrined—"in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and **secure the Blessings of Liberty to ourselves and our Posterity**." U.S. Const. Pmbl. (emphasis added). To this very day, "we continue to strive toward '[that] more

perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:11–cv–1110–Orl–37KRS, 2013 WL 5230659, at *1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and sometimes it requires the intervention of the judiciary to set the guardrails for the protection of the Republic's liberties.

11.     Recognizing that times of crisis would arise, that such times might lead governments to seek to repress precious freedoms, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding document is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground—that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

12.     During times of national crisis, the very times when we call upon the United States Armed Forces heroes most, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of [the First Amendment]." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Without doubt, "[t]herein lies the security of the Republic, the very foundation of constitutional government." *Id.*

13.     Indeed, "[t]imes of crisis take the truest measure of our commitment to constitutional values. **Constitutional values are only as strong as our willingness to**

reaffirm them when they seem most costly to bear." *Hartness v. Bush*, 919 F.2d 170, 181 (D.C. Cir. 1990) (Edwards, J., dissenting) (emphasis added). Our willingness to reaffirm our staunch commitment to our fundamental freedoms is imperative to the very survival of the American experiment. **Servicemember Plaintiffs have demonstrated their staunch commitment, and it is time that we honor ours.** "History reveals that the initial steps in the erosion of individual rights are usually excused on the basis of an 'emergency' or threat to the public. **But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and tranquility alike.**" *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring) (emphasis added). For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded.**" *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added).

14.     Plaintiffs have demonstrated their commitments to the United States Constitution and the Nation's future comfort, security, and prosperity. **This Court should demand that the Nation return the favor**. Telling Plaintiffs they must accept or receive a shot they oppose according to their sincerely held religious beliefs, or face court martial, dishonorable discharge, and other life altering disciplinary measures, disgraces the sacrifices these heroes have made.

15.     Defendants' vaccine mandate, ostensibly responding to a public health crisis, has created a national emergency of much greater magnitude. The mandate

attacks the military from *within* by removing brave servicemembers from defending the Nation by land, air, and sea, and from *without* by eliminating the dedicated civilian defense contractors and employees providing everything from boots and uniforms, to cyber security, to the world's most advanced stealth fighter jet—the F-35 Raptor— solely because these protectors of our constitutional freedoms requested accommodation of their sincerely held religious beliefs under the same Constitution. The crisis created by Defendants' mandates, applied to two million federal employees, is unnecessary and completely avoidable, but nonetheless imminent and real.

16.    A TRO is needed now to prevent the immediate and irreparable injury to Plaintiffs imposed by these unlawful COVID-19 mandates.

## PARTIES

17.    Plaintiff NAVY SEAL 1, United States Navy, is a citizen of the State of California currently stationed at a United States Naval facility in California. NAVY SEAL 1 has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. NAVY SEAL 1's request for a religious exemption and accommodation was denied, and he was immediately removed from his position in the United States Navy. Special Operations Chief NAVY SEAL 1 enlisted in the Navy in 2009 and wanted to serve his country to the best of his ability. NAVY SEAL 1 sought to and became a Navy SEAL. He received training from 2009 starting and finishing BUD/S (Basic Underwater Demolition/SEAL) and SQT (SEAL

Qualification Training) with class 278. He deployed to Afghanistan from December 2011 to September 2012, and received a Navy and Marine Corps Commendation Medal with a combat "V" (valor) for his actions during deployment, along with a combat action ribbon. NAVY SEAL 1's second tour was to the Philippines in support of Operation Enduring Freedom, working under Joint Special Operations Task Force (JSOTF), and receiving an Army Commendation medal. For his third tour, which was outside of his usual deployment cycle and thus 100% voluntary, NAVY SEAL 1 volunteered to augment SEAL Team Seven during the height of the Mosul, Iraq clearance from February to April 2017. During NAVY SEAL 1's fourth tour, in Iraq from August 2017 to March 2018, NAVY SEAL 1 was the acting assault lead, putting him in charge of a platoon level force to execute the tactical direction of the platoon chief, and he earned a Navy and Marine Corps Achievement Medal and a Navy and Marine Corps Commendation Medal with a "C" (Combat). His most recent tour was to the United Arab Emirates (UAE) from March to September 2020. For his leadership setting up, organizing, and executing a large joint close air support (CAS) and combat search and rescue (CSAR) exercise, NAVY SEAL 1 received a Navy and Marine Corps Commendation Medal. This robust exercise included units from 5 different countries and over 15 assets. NAVY SEAL 1 also received awards for his time spent at training commands. His first tour was at TRADET-1 as the SOUC (Special Operations Urban Combat) Lead Petty Officer from December 2014 to June 2016. He received a Navy and Marine Corps Achievement Award for his efforts there. His second training command tour was as the Lead Chief Petty Officer of the Navy's only

Joint Close Air Support school.  For his efforts in synchronizing joint assets and providing mission critical qualification training for creating Joint Terminal Attack Controllers (JTAC) he received a Navy and Marine Corps Commendation Award.

18.     Plaintiff NAVY SEAL 2, United States Navy, is a citizen of the State of Texas and is stationed in the State of Florida. NAVY SEAL 2 has served his country honorably and sacrificially for 19 years. NAVY SEAL 2 submitted a request for a religious accommodation and exemption from the United States Navy. NAVY SEAL 2's request for a religious exemption and accommodation detailed NAVY SEAL 2's religious beliefs and practices that compel him to abstain receiving any of the currently available COVID-19 vaccines. NAVY SEAL 2's request for a religious accommodation was supported by a letter from a religious leader, which demonstrated the sincerity of NAVY SEAL 2's personal beliefs. NAVY SEAL 2's commander noted that NAVY SEAL 2's religious beliefs were sincere and strongly held, but recommended that his request be disapproved, citing readiness, despite NAVY SEAL 2's currently working in a non-deployable staff position. NAVY SEAL 2's request for an accommodation has been forwarded to the Chief of Naval Personnel who is responsible for making the final determination.  NAVY SEAL 2 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation for his sincerely held religious beliefs.

19.     Plaintiff NAVY EXPLOSIVE ORDNANCE DISPOSAL OFFICER ("NAVY EOD OFFICER"), United States Navy, is a citizen of the State of Florida currently stationed at a United States Naval facility in the State of Hawaii. NAVY

EOD OFFICER has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. After NAVY EOD OFFICER's request for a religious exemption and accommodation, he was immediately placed in a "Not Physically Qualified" ("NPQ") status. If his religious exemption and accommodation request is not granted, he will not be allowed to deploy in January, thus removing him from his position at that time. NAVY EOD OFFICER has admirably and honorably served in the United States Navy for over 19 years, initially becoming an enlisted Navy salvage diver, following which he became an officer specializing in Explosive Ordnance Disposal (EOD). NAVY EOD OFFICER submitted a request for a religious accommodation and exemption from the United States Navy. NAVY EOD OFFICER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY EOD OFFICER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

20.     NAVY SENIOR CHIEF PETTY OFFICER is a 17-year Active Duty Senior Chief Petty Officer stationed with the Marines. His career is marked with service primarily within Special Operations Units, with eight (8) deployments, high performance marks, and nine (9) personal awards. He holds a bachelors from George

Washington University in Clinical Health Sciences, and four (4) years of military medical, CBRN and advanced medical training with a focus on operational medicine in the deployed setting. NAVY SENIOR CHIEF PETTY OFFICER obtained his Sub-Investigator Certification in 2017 from the FDA, so he could conduct informed consent of EUA Freeze Dried Plasma (FDP) product, track its use and report back up the chain of command to the FDA. As part of this informed consent, NAVY SENIOR CHIEF PETTY OFFICER was required to conduct an hour long brief to all eligible personnel of the risks, benefits and right to refusal of the EUA product. The program placed heavy emphasis on the impropriety of coercive tactics to obtain "consent." Impeccable documentation was required, all personnel had to be afforded consent, all consents had to be legible, contain addresses, contain witnessed signatures, with formatting and dates matching. Audits were regularly conducted so any improper documentation that failed to meet this stringent standard was returned and required to be immediately resubmitted. In contrast, NAVY SENIOR CHIEF PETTY OFFICER's experience with COVID-19 vaccine has been completely the opposite, having observed coercion, public shaming, improper documentation, vaccine stacking and an overall cavalier attitude towards new technology that does not have any long term data. In Summer 2021, NAVY SENIOR CHIEF PETTY OFFICER was infected with SARS-CoV-2 and recovered within two weeks, and now has serological evidence of natural immunity that many experts believe to be consistent with or even superior to the COVID-19 vaccine, and which is recognized by Navy regulation as a basis for exemption from immunization. NAVY SENIOR CHIEF PETTY OFFICER has

15

submitted a religious exemption request to the COVID-19 vaccine, on the basis of the leading of the Holy Spirit, and his Christian religious beliefs, including beliefs that the body is the temple of the Holy Spirit, and the COVID-19 vaccine's close connection to abortion.

21.    Plaintiff NAVY CHAPLAIN is a Chaplain in the United States Navy, with over 18 years' honorable service. NAVY CHAPLAIN has personally observed the effect the mandatory COVID vaccination orders have had on mental health and readiness of multiple Sailors, in the course of his recent deployment with a Carrier Strike Group.

22.    Based on his own sincerely-held Christian religious beliefs, NAVY CHAPLAIN has submitted a religious exemption request for an accommodation from the COVID shot mandates. NAVY CHAPLAIN believes accepting any of the approved COVID vaccines would be an act of irreverence toward God and would be an attempt to alter the embodied image of God within individuals, and therefore a sin contrary to historic Judeo-Christian tradition and his Christian faith.

23.    NAVY CHAPLAIN's commander has provided a negative recommendation for NAVY CHAPLAIN's religious accommodation request. If his request is not approved, NAVY CHAPLAIN fears being forced to choose between his career of service to fellow Sailors, which he loves, and his faith in God and God's commands.

24.    Plaintiff, LIEUTENANT COLONEL 1, United States Marine Corps, is a citizen of the State of Texas currently stationed at a United States military facility in

the State of Arizona. LIEUTENANT COLONEL 1 has requested an exemption and accommodation for his sincerely held religious objections to the Secretary's mandate that all United States Military personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. LIEUTENANT COLONEL 1's request for a religious exemption and accommodation is processing and adjudication of his request is pending. LIEUTENANT COLONEL 1 is currently an officer and a pilot in the Marine Corps. He has more than 18 years' exemplary service in the Marine Corps and wishes to continue serving his country for many more. LIEUTENANT COLONEL 1's duties include service as a senior officer and pilot with his unit. LIEUTENANT COLONEL 1 has served the United States on five combat tours and deployments, including one combat deployment in support of Operation Iraqi Freedom (OIF) and two combat deployments in Operation Enduring Freedom (OEF – Afghanistan). LIEUTENANT COLONEL 1 has also served as a TopGun graduate, F/A-18 pilot and instructor, Forward Air Controller (ground-based position calling in air strikes in support of Marine infantry), and in many other billets. Close Air Support and Forward Air Control involves responsibility for dropping ordnance (bombs), firing rockets, and aerial gunnery on enemy targets in close proximity to Marine infantry. An error in judgment or calculation can result in the deaths of Americans and allies in who are in close proximity to the enemy. LIEUTENANT COLONEL 1's skill at both has saved countless American lives and has destroyed America's enemies. LIEUTENANT COLONEL 1, United States Marine Corps, submitted a request for a religious accommodation and exemption from the United

States Marine Corps. LIEUTENANT COLONEL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LIEUTENANT COLONEL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and who found that LIEUTENANT COLONEL 1's request was made from a position of "absolute sincerity." LIEUTENANT COLONEL 1's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation for his sincerely held religious beliefs.

25.    Plaintiff LIEUTENANT COLONEL 2 is a FY 22 Command Selected Officer and native of Queens, NY. She enlisted in the Marine Corps in June of 1997 and served as an Administrative Clerk after completing the Unit Diary Clerks Course in the top ten percent of the class. She served in the reserves and volunteered for active duty following the attacks on September 11th. In 2003, LIEUTENANT COLONEL 2 wanted to be a role model for other women and completed Officer Candidate School where she received her commission as a Second Lieutenant in the Marine Corps. As a Company Grade Officer, she served in several leadership roles including duties as a Platoon Commander in garrison and during Operation Iraqi Freedom.  She served as a Series Commander at Marine Corps Recruit Training, Parris Island and staff jobs at several O5 level commands. She also deployed as a staff officer in support of Operation Enduring Freedom (Afghanistan). As a Field Grade Officer, she was selected and

served as a Department of Defense Fellow and helped conduct research to integrate women into ground combat arms jobs. Later, she was selected for Command and Staff College where she earned her Master's Degree through the Advanced Studies Program As a field grade officer, she held billets as  a Company Commander, Battalion Executive Officer, and Operations Officer She also served as her unit's Diversity and Inclusion Officer. LIEUTENANT COLONEL 2 is currently pending a second modification to her permanent change of station orders to NAVCENT, Bahrain because she submitted a religious accommodation package although she was administratively and medically cleared to execute her orders. LIEUTENANT COLONEL 2 has had an exemplary career.  However, like many others,  her faith journey has several blemishes that she does not typically discuss unless she is moved by the Holy Spirit to share personal aspects of her life story to help someone in need.  One of the concerns that contributes to her decision not to receive the COVID 19 shot is because of her strong opposition to abortion and how God forgave and healed her from her own abortion. Specifically, in 1995, LIEUTENANT COLONEL 2 became pregnant after being raped. The anger and humiliation of the sexual assault led her to have an abortion which made her even more ashamed.  In fact, after her abortion, LIEUTENANT COLONEL 2 felt like a murderer, and punished herself because she felt unworthy. This behavior only stopped after her husband caught her punishing herself, and helped her realize that God had truly forgiven her for the abortion. The COVID shot mandate, given the use of aborted fetal cell lines in testing and development, places LIEUTENANT COLONEL 2 in the position of reliving her

rape and subsequent abortion, by being forcibly injected with a product tested on or made with aborted fetal cells, or being dismissed from the service she loves.

26.    Plaintiff MAJOR, United States Marine Corps ("USMC MAJOR") is stationed in North Carolina. He is a patriotic American who believes that Jesus Christ is the virgin-born, incarnate Deity:  the King over all kings and the LORD of all lords, Whose shed blood is the sole hope for human redemption from sin and eternal judgment, Whose death and resurrection testify to His preeminence over all creation, and at Whose name alone every knee shall bow. Desiring to serve his country, and follow God's leading for his life, USMC MAJOR took the oath of conditional enlistment in 2004 and was commissioned a second lieutenant upon completion of the Officer Candidate Course in August 2005.  After graduating from The Basic School, he attended the Military Police Officer Basic Course, and spent his first tour of duty in Okinawa, Japan, where he served as Officer in Charge (OIC) for two districts, including an Air Station, off-base jurisdiction areas, and three military camps.  He also performed duties as the Antiterrorism and Force Protection officer for two multinational exercises in Korea. USMC MAJOR then deployed to Iraq, where as a platoon commander and convoy commander he led Marines across Al Anbar and Diyala Provinces.  Thereafter, as a Provost Marshal's Office Operations Officer, he directed law enforcement operations at the Marine Corps' largest training base for several years; went to Headquarters United States Marine Corps and worked as a staff officer in the Pentagon for several more. USMC MAJOR received additional specialized training and deployed a second time to Iraq, advising and assisting Iraqi

Security Forces in counterpropaganda efforts to defeat ISIS terrorists. Subsequently, he commanded Headquarters Company in a Law Enforcement Battalion; served as Force Protection Officer for a Marine Logistics Group (Forward) in Norway; and deployed to Afghanistan as an advisor to several military, police, and governmental organizations. USMC MAJORhas submitted a religious exemption request to the COVID shot mandates. He desires to continue serving in the Marine Corps, consistent with his deep personal faith in the Bible as the Word of God, and consistent with his conscience and the personal leading of Jesus Christ regarding what he admits into his body (which is the temple of the Holy Spirit). These require him to reject any involvement with the destruction of innocent human life as exemplified by the use of human fetal cell lines derived from abortions.

27.     Plaintiff SECOND LIEUTENANT, United States Marine Corps, is a citizen of the State of Alabama who graduated from the United States Naval Academy (USNA) in 2021 and is now currently at The Basic School (TBS). Prior to the Naval Academy, he attended Marion Military Institute (MMI) for two years. His six years of military college were deliberate, as he has spared no expense in preparing himself to serve as the caliber of leader that United States Marines deserve. He has maintained a flawless conduct record throughout his time in college and in service, as he believes setting such an example is paramount. He has sought out every opportunity for leadership positions requiring ironclad integrity and a dedication to the Profession of Arms, including the MMI Cadet Honor Board and USNA Brigade of Midshipman Honor Investigation System. His professional education and mentorship has focused

extensively on the nuances of military law, good order and discipline, the concept of "immediate obedience to orders," and the invaluable obligation that a commissioned officer holds to honor his or her Oath of Office. He is well known by his peers to be exceptionally disciplined in his conduct and dedicated to his Oath of Office, even in facing the potential loss of his livelihood and lifelong dream of serving and leading Marines. SECOND LIEUTENANT submitted a request for a religious accommodation from the COVID shot mandate, on multiple grounds, including his sincerely-held religious belief "that, first and foremost, a Christian's body is the Temple of the Holy Spirit and should be protected from deliberate or reckless injury or violation," and second, that "deceit pursuant to personnel compliance and/or financial gain, is morally objectionable before God." Upon submitting his religious exemption request, he was immediately removed from his training company, and placed in Mike Company, a non-training company reserved for 2nd Lieutenants who are either injured and unable to complete training, or are pending punitive legal action, while his religious accommodation request is routed up his Chain of Command for a final decision from the Deputy Commandant of the Marine Corps. SECOND LIEUTENANT should have been kept in his training company while his request was pending, as he has not violated any DoD or Marine Corps orders in doing so, and is administratively exempt from all pertinent orders for the duration of time awaiting a final decision. His placement in Mike Company and removal from active training does not protect the force from COVID, as SECOND LIEUTENANT is required to provide administrative and labor assistance to the command, in support of his

colleagues in the field and elsewhere. He is required to physically interact with his peers in all current Basic Officer Course classes in the execution of his support role duties. In other words, he remains active around base, working to help his former colleagues graduate from training, while his own training has been placed on hold indefinitely despite no legal or administrative misconduct. This is punitive and an improper response to a religious exemption request. SECOND LIEUTENANT deeply desires to continue training for service to the Nation in the United States Marine Corps, without the profound conflict between his religious beliefs and the COVID shot directives, and without discrimination.

28.    Plaintiff CAPTAIN, United States Marine Corps, is a citizen of the State of South Carolina and a patriotic American whose faith is Islam. Desiring to serve his country, he enlisted in the United States Marine Corps in 2014, graduating from recruit training in March 2015.  After serving with a Law Enforcement Battalion and earning his undergraduate degree, he was selected for Officer Candidate School, and commissioned as a second lieutenant in 2016. After graduating from The Basic School, he attended the Military Police Basic Officer Course, with his first duty assignment at a Marine Corps Law Enforcement Battalion as a Platoon Commander. He attended courses in Norway and commanded a Military Police Integrated Company during a NATO Exercise. He has been deployed in several locations, including Africa. CAPTAIN desires to continue serving in the Marine Corps, consistent with his Islamic religious beliefs that require him to abstain from

participation in that which is *haram* – forbidden – including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions. CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally-tainted COVID shots.

29.     Plaintiff ARMY RANGER, United States Army, ARMY RANGER, United States Army, is a citizen of the State of Missouri currently stationed at a United States military facility in the State of Washington. ARMY RANGER has requested an exemption and accommodation for his sincerely held religious objections to the Secretary's mandate that all United States Military personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. ARMY RANGER has submitted a request for a religious exemption and accommodation, but he has been told by a superior the superior is concerned that the request will "put a target on him" as he is one of two men in the company who have requested a religious exemption from getting the COVID shot. Nonetheless, this superior supports his request for a religious exemption. ARMY RANGER entered active duty in 2015 as an Infantryman (11B). He was selected for Ranger Assessment Selection Program (RASP) in 2015, and graduated Ranger School in 2017, earning his Ranger Tab. He has deployed twice in support of Operation Freedom Sentinel. He is committed to serving the Nation and desires to continue, so long as he is not forced to violate his own religious beliefs and what he believes God requires of him.

30.     Plaintiff LANCE CORPORAL 1, United States Marine Corps, is a citizen of the State of California currently stationed at a United States Marine Corps facility in California. LANCE CORPORAL 1 has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. LANCE CORPORAL 1's request for a religious exemption and accommodation was **denied**. LANCE CORPORAL 1 is currently serving in the United States Marine Corps in the 1st Radio Battalion, I Marine Expeditionary Force Information Group with the I Marine Expeditionary Force. LANCE CORPORAL 1 was raised in a Christian home where his father always told him that he had the choice of going to college or joining the military. Once he decided to join the military, LANCE CORPORAL 1 instantly chose the Marines because he believed they are the best of the bunch. LANCE CORPORAL 1 started dedicating his life to physical fitness to prepare for the difficult journey he chose. LANCE CORPORAL 1 has discovered a talent and passion for Electrical Maintenance, and intends to pursue it as a civilian career post-military. LANCE CORPORAL 1 signed a 5-year contract, and he plans on serving his country for 5 years. LANCE CORPORAL 1 submitted a religious exemption request from the United States Marine Corps. LANCE CORPORAL 1's request for a religious accommodation and exemption articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LANCE CORPORAL 1's request for a

religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

31.    Plaintiff LANCE CORPORAL 2 is a citizen of the Commonwealth of Virginia, currently stationed in North Carolina. LANCE CORPORAL 2 joined the Marine Corps in 2018 out of a desire to serve his Country. He graduated Boot Camp, Marine Corps Combat Training, and MOS School, and became a Combat Engineer. LANCE CORPORAL 2 has a strong faith in God and his Son Jesus Christ. He submitted a religious exemption request to the COVID shot orders based on his sincere Christian religious beliefs. He feels the strong conviction of God's Holy Spirit upon his heart that he must not get the COVID shot, and that if he were to get the COVID shot, it would be sin as a violation of the Holy Spirit's leading and direction, and also that it would be sinful complicity in the murder of innocent unborn humans.  He believes that all people, born and unborn, are created in God's image, and that life should be respected. He believes it is disrespectful to innocent human life to be associated with or take into his body products derived from abortion. Lance Corporal 2 has been told by several non-commissioned officers that "it is unlikely your religious exemption request will be approved," and that "they're just going to deny them all." If these superiors are correct, he faces involuntary administrative separation at best, and at worst, dishonorable discharge and other life-altering punishment.

32.   Plaintiff MAJOR, UNITED STATES AIR FORCE (AIR FORCE MAJOR), is an officer in the U.S. Air Force with over 18 years of honorable active-duty service, and holds a Master of Science degree from an accredited Christian university. As a teenage Christian missionary to Mexico, he developed a strong appreciation for the blessings of his home in America and the legacy of Christian values that sets our nation apart. With this love of God and his Christian American legacy, he answered the call on his life to serve the Nation in the Air Force. He was sworn in as a lieutenant by his grandfather, a retired Colonel. AIR FORCE MAJOR went on to fly many life-saving combat missions in Iraq, Africa, and Afghanistan.  The hell of war struck AIR FORCE MAJOR very deeply through the loss of friendly forces' lives, the suicide of fellow airmen, as well as the deaths of innocent civilians. During one tragic mission, while defending forces surrounded by heavy enemy gunfire, AIR FORCE MAJOR suffered a deadly loss in the gunfight. In his profound devastation, AIR FORCE MAJOR called on Jesus' help to carry him through the night of continued danger to the special operations team. In subsequent years, his faith journey out of the depths of that pain and pains from other combat missions has led him to assist in several Christian ministries. He supervised weekly youth church services, Christian summer camp, counseled at a Christian charity relief center, and travelled on leave to Ethiopia to help establish a care point for an international Children's poverty relief center. AIR FORCE MAJOR's life ministry now includes his own children. Having recently learned of the use of human abortion derived fetal cell lines in the development, production, or selection and testing of COVID vaccines, AIR

FORCE MAJOR's religious convictions conflict with DoD orders that he partake of them. AIR FORCE MAJOR follows God's written direction from Scripture, and knows that he must abstain from the use of vaccines derived from aborted fetal cell lines. Per Proverbs 6:16-17, he has a strong conviction that God will judge "hands that shed innocent blood" and he cannot align himself with such deeds. He believes respect for innocent human life is what differentiates America from horrific perpetrators of human rights abuses and genocide.

33. Plaintiff NATIONAL GUARDSMAN, Virginia Army National Guard, a citizen of the Commonwealth of Virginia, entered service with the Virginia Army National Guard in 1987. He graduated Fort Benning Infantry school and became an Infantryman. His unit attended and graduated Jungle Expert school and pulled guard duty in 1988 before the Invasion of Panama. He is an expert rifleman more times than not. He was selected as the Soldier of the Year for his company and went on to win the board for the Battalion Soldier of the year in 1989. He was promoted to SGT in June of 1990. NATIONAL GUARDSMAN was employed by a Textile Mill in Virginia where he quickly rose to Production Supervisor where he served until June 2001 when NAFTA was taking a toll on the economy. He made a career change and enlisted into the Active Guard Reserve (AGR) program 2001. From May 2001-2005, he's served as Readiness/Training NCO and deployed to Guantanamo Bay, Cuba where he performed Force Protection Duties along with being the Sergeant of the Guard of Camp Delta Detainment Center. Upon returning to the United States, he earned another MOS in Logistics. In 2007, NATIONAL GUARDSMAN was

promoted to Sergeant First Class. With his new unit, he served as the Senior Logistics

NCO in charge and in May of 2010, NATIONAL GUARDSMAN deployed to the

austere Shindand, Afghanistan during the 2010 Surge, and it was there that he earned

the Bronze Star (without V Device). He deployed as the Senior BN Logistics NCO

with the 1-116th IN to Doha, Qatar for a Force Protection mission. NATIONAL

GUARDSMAN served or trained in 7 countries and has over 50 awards / Impact

awards.  He has served as an Infantryman Squad Leader, Platoon SGT, First SGT and

a Logistics NCO, has two additional skill identifiers of Battle Staff NCO and DoD

Contracting Specialist.  He is currently Number 2 on the State of Virginia Army

National Guard. NATIONAL GUARDSMAN submitted a request for a religious

accommodation and exemption from the Virginia Army National Guard.

NATIONAL GUARDSMAN articulated to his command that he has and exercises

sincerely held religious beliefs that compel him to abstain from receiving any of the

currently available COVID-19 vaccines. NATIONAL GUARDSMAN's request for a

religious exemption and accommodation has not been approved, and he has been told

that he could potentially face court martial, dishonorable discharge, and other life-

altering disciplinary measures for merely requesting an accommodation for his

sincerely held religious beliefs. NATIONAL GUARDSMAN has also been

REMOVED from his scheduled deployment because of his request for an

accommodation and exemption.

34.     Plaintiff COAST GUARD LIEUTENANT, United States Coast Guard,

is a citizen of the State of Florida. She has spent 14 years in service to her country, and

is currently stationed along the Gulf Coast. Following in the footsteps of two generations of her family, she felt the call to serve as a young child. COAST GUARD LIEUTENANT had a desire to serve the people of this nation and steward its natural resources and the Coast Guard's missions had been a perfect fit. During her time in the Coast Guard, COAST GUARD LIEUTENANT has felt privileged to serve alongside a diverse group of people from all around the world, including the Naval and Coast Guard members of other nations. COAST GUARD LIEUTENANT submitted a request for a religious accommodation and exemption from the United States Coast Guard outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines. While breastfeeding her child born earlier this year, she is currently under a temporary medical exemption while undergoing testing for allergies to vaccine components. Though her immediate supervisor supports her requests, COAST GUARD LIEUTENANT has been informed that should these waivers be denied, she may face an other-than-honorable discharge, loss of benefits, and other disciplinary measures if she does not accept the COVID-19 vaccine. COAST GUARD LIEUTENANT has also been informed that even if the medical waivers are approved, she may be determined medically unfit for service and discharged.

35.    Plaintiff COLONEL, United States Army, is a citizen of the State of Texas and has served as a health care provider in the United States Army for 22 years. He has been deployed twice to Bosnia for six-months, and to Iraq for one year. COLONEL has treated countless numbers of Soldier patients over his career, and his family has sacrificed, as a military families do, for him to be able to serve Soldiers and

other members of the military. COLONEL hoped to retire with the United States Army, but as a result of the COVID-19 mandate, he faces discipline for the mere exercise of his sincerely held religious beliefs. COLONEL submitted a request for a religious accommodation and exemption from the United States Army. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

36.    Plaintiff TECHNICAL SERGEANT, United States Air Force, is a citizen of the State of Oklahoma and has spent 15 years in service to her country in the United States Air Force. She felt the call to serve after high school, after being so emotionally affected by the events that transpired on September 11, 2001. TECHNICAL SERGEANT wanted to become a part of something much bigger than herself, and the Air Force offered her a wonderful opportunity. During her time in the Air Force, TECHNICAL SERGEANT felt privileged to serve with so many selfless and inspirational people all around the world. She spent time in Texas, Mississippi, Illinois, Hawaii, and South Korea. She has been deployed to Kandahar Air Base, Afghanistan, spending six months supporting Operation Enduring Freedom.

TECHNICAL SERGEANT submitted a request for a religious accommodation and exemption from the United States Air Force outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines. Although she is currently under a temporary medical exemption due to being seven months pregnant, TECHNICAL SERGEANT has been informed that once that runs out, she will face court martial, dishonorable discharge, and other disciplinary measures if she does not accept the COVID-19 vaccine.

37.    Plaintiff DEFENSE DEPARTMENT CONTRACTOR (and NAVY RESERVE CHIEF WARRANT OFFICER) is a citizen of the State of Florida and a contractor of the United States Department of Defense (DoD). DEFENSE DEPARTMENT CONTRACTOR is on leave of absence from his DoD Contractor employer, where he conducted Intelligence, Surveillance, and Reconnaissance (ISR) quantitative and qualitative assessments and studies in all phases of ISR asset and sensor performance and effectiveness for the DoD.  These assessments are briefed to DoD senior leadership to inform decisions on future employment, allocation, and procurement. He holds a Top Secret/Sensitive Compartmented information (TS/SCI) security clearance. As a NAVY RESERVE CHIEF WARRANT OFFICER, he formerly enlisted in the Navy Reserve's Non-Prior Service and Advance Pay Grade (APG) programs in November 2003. After completing basic training in August 2004, DEFENSE DEPARTMENT CONTRACTOR was assigned to NR SECGRU Minneapolis from 2004 to 2010. From January to December 2008, DEFENSE DEPARTMENT CONTRACTOR was mobilized in support of Operation Iraqi

Freedom as part of a Joint Task Force stationed in Balad, Iraq. Following his mobilization, DEFENSE DEPARTMENT CONTRACTOR returned to NR NIOC Texas-Minneapolis and was advanced to Chief Petty Officer in September 2009. DEFENSE DEPARTMENT CONTRACTOR's military leadership assignments include Operations Department Leading Chief Petty Officer at NR NIOC Minneapolis, Senior Enlisted Leader and then Senior Chief Petty Officer in 2015 at NR NIOC Georgia-Orlando, Senior Enlisted Leader at NR Office of Naval Intelligence, and Senior Enlisted Leader NR at NIOC Georgia – Pensacola. Following his tour at NR NIOC Georgia – Pensacola, he was commissioned as a CWO2 in 2019. Following his commissioning, he affiliated with NR C10FNIOCGA ORL and has been on active duty orders supporting US Special Operations Command J24. He has submitted a request for a religious accommodation and exemption from the United States outlining his sincerely held religious objections to receiving one of the COVID-19 vaccines because of their connection to aborted fetal cell lines. DEFENSE DEPARTMENT CONTRACTOR's request was supported by a Chaplain's recommendation and his supervisor's recommendation. DEFENSE DEPARTMENT CONTRACTOR has not received a response to his request for a religious accommodation but has been informed that it is not likely to be granted.

38.     Plaintiff FEDERAL CIVILIAN ENGINEER CONTRACTOR is a citizen of the State of Georgia and employed by a large military defense contractor that provides LCD screens used in United States Armed Forces aircraft. FEDERAL CIVILIAN ENGINEER CONTRACTOR is a level-2 electrical engineer working

nearly exclusively on contracts for the United States Armed Forces. FEDERAL CIVILIAN ENGINEER CONTRACTOR is an active congregant of his church with sincerely held religious beliefs that compel him to abstain from accepting or receiving the COVID-19 vaccines. FEDERAL CIVILIAN ENGINEER CONTRACTOR would like to submit a request for a religious exemption and accommodation, but has has seen his employer's responses to some religious exemption requests submitted by colleagues stating a "waiver of required vaccination should be granted indefinitely, after which time you will need to be fully vaccinated," rendering any granted exemption potentially illusory, and subject to revocation at any time.

39.     Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER is a citizen of the State of Michigan who owns his own engineering company located in the Midwest. FEDERAL CIVILIAN CONTRACTOR EMPLOYER and his company develop and support military weapons systems, including current and next generation land vehicles for the Army and next generation Navy vessels. FEDERAL CIVILIAN CONTRACTOR EMPLOYER would like to request a religious exemption and accommodation from the Executive Order mandating that all government contractors mandate the COVID-19 vaccines, and he would like to be able to accommodate and exempt his employees that likewise have sincerely held religious objections to the COVID-19 vaccines. FEDERAL CIVILIAN CONTRACTOR EMPLOYER is concerned that as a result of his desire to provide religious exemptions and accommodations and the Executive Order mandating that all government

contractors and subcontractors require COVID-19 vaccines of their employees, his government contracts (future and current) will be terminated.

40.    Plaintiff FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is a citizen of the Commonwealth of Virginia and a young woman of child-bearing age. She holds sincere Christian religious beliefs about human life and marriage. She believes that mankind was created by God, that men and women are designed for a unique, complementary relationship within the context of marriage, and that as part of that relationship, God has designed the female body to fulfill the Creation mandate to "be fruitful and multiply." FEDERAL NUCLEAR CONTRACTOR EMPLOYEE believes abortion to be a great sin, and is morally opposed to the use of aborted fetal cells in the testing or development of vaccines, including the COVID vaccines. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is not married yet, but hopes to be one day, and in that relationship to have a child or children as God blesses her. She believes that "children are an heritage of the Lord," and that bearing a child or children in the context of marriage fulfils a Divine mandate. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is aware that no long-term studies have been performed on any of the COVID shots regarding their impact on female fertility, and given her religious beliefs about marriage and childbearing, cannot receive any of the COVID shots. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE fears being placed in the position of having to choose between her job and her faith.

41.    Plaintiff DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH is a citizen of the State of Texas and is an R&D Research Technician/Operations Technician for Material Physics Applications Quantum (MPA-Q) which is his group at the Los Alamos National Laboratory in New Mexico. He works with Radar Frequencies, Tesla Magnets, Class 3/4 Laser Operations and Experiments, as well as many other aspects of the DOE's nuclear programs. He has been employed at his current position for 12 years and is a faithful and exemplary employee. DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH requested a religious exemption and accommodation from Defendants' COVID-19 vaccine mandate on federal civilian contractors, and his request was denied. DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH was given until October 15 to accept one of the vaccines or face termination.

42.    Defendant JOSEPH R. BIDEN, in his official capacity as President of the United States, is the head of the federal government and Commander in Chief of the United States Armed Forces, and is responsible for enacting, implementing, and enforcing the federal COVID-19 vaccine mandate for members of the United States Armed Forces and civilian federal employees and contractors. Specifically, President Biden issued two Executive Orders on September 9, 2021, mandating that all civilian federal employees and contractors receive a COVID-19 vaccine. President Biden is sued in his official capacity.

43.     Defendant LLOYD AUSTIN, in his official capacity as the Secretary of the United States Department of Defense (DoD), is responsible for enacting, implementing, and enforcing the federal COVID-19 vaccine mandate for members of the United States Armed Forces under DoD authority. Specifically, Secretary Austin issued the August 24 Memorandum for Senior Pentagon Leadership and other officials mandating that all military servicemembers under Department of Defense authority receive a COVID-19 vaccine. Secretary Austin is sued in his official capacity.

44.     ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, is responsible for enacting, implementing, and enforcing the federal COVID-19 vaccine mandate for members of the United States Coast Guard and other civilian federal employees and contractors. Secretary Austin issued a directive, in accordance with President Biden's September 6 Executive Orders, mandating that all Department of Homeland Security employees, including United States Coast Guard servicemembers, receive a COVID-19 vaccine. Secretary Mayorkas is sued in his official capacity.

## JURISDICTION AND VENUE

45.     This action arises under the First Amendment to the United States Constitution. This action also arises under federal statutory law, namely the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4, and under the Emergency Use Authorization provisions of the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 360bbb-3.

46.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

47.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

48.     This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure.

49.     This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order (TRO) and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

### A.     THE FEDERAL COVID-19 VACCINE MANDATE.

50.     On September 9, 2021, President Biden issued Executive Order 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, requiring all federal employees to receive one of the COVID-19 vaccines as a condition of employment. (A true and correct copy of Executive Order 14043 is attached hereto as **EXHIBIT A** and incorporated herein.)

51.     In Executive Order 14043, President Biden stated: "I have determined that to promote the health and safety of the Federal workforce and the efficiency of the civil service, it is necessary to require COVID-19 vaccination for all Federal employees . . . ." (Ex. A at 2.)

52. Consistent with that determination, Executive Order 14043 states: "Each agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees . . . ." (Ex. A at 2.)

53. Also on September 9, 2021, President Biden issued Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, requiring that all federal contractors and subcontractors "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force." (A true and correct copy of Executive Order 14042 is attached hereto as **EXHIBIT B** and incorporated herein.) Pursuant to Executive Order 14042, the Safer Federal Workforce Task Force issued its *Guidance for Federal Contractors and Subcontractors* on September 24, 2021, requiring that all employees of federal contractors and subcontractors receive one of the COVID-19 vaccines as a condition of performing any contract for work for the Federal Government. (A true and correct copy of the *Guidance* is attached hereto as **Exhibit C** and incorporated herein.)

54. On August 24, 2021, Secretary Austin issued a Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, and Defense Agency and DoD Field Activity Directors, Subject: Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members, mandating that all military servicemembers under DoD authority receive the COVID-19 vaccine. (A true and correct copy of the Secretary's August 24 Memorandum is attached hereto as **EXHIBIT D** and incorporated herein.)

55.    In his Memorandum, Secretary Austin stated: "After careful consultation with medical experts and military leadership, and with the support of the President, I have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." (Exhibit D at 1.)

56.    Secretary Austin further stated: "I therefore direct the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19." (Exhibit D at 1.)

57.    Though not even possible right now (*see infra*), the Secretary stated that mandatory vaccination "will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance." (Ex. D at 1.)

**B.    PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS.**

58.    Plaintiffs all have sincerely held religious beliefs, rooted in Scripture, that preclude them from complying with the Federal COVID-19 Vaccine Mandate because of the connections between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs. Plaintiffs also have sincerely held religious beliefs, rooted in Scripture, that their bodies are temples of the Holy Spirit and that they cannot place anything into their Temples without confirmation and conviction from the Holy Spirit.

59.    A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is the murder of an innocent life and a grave sin against God.

60.    Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

61.    Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

62.    Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to birth, and that because of this, life is sacred from the moment of conception to natural death. *See Psalm* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalm* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (ESV) ("Thus says the Lord who made you, who formed you from the womb . . . ."); *Isaiah* 44:24 (ESV) ("Thus says the Lord, your Redeemer, who formed you from the womb: 'I am the Lord, who made all things . . . .'"); *Isaiah* 49:1b (ESV) ("The Lord called me from the womb, from the body of my mother he named my name."); *Isaiah* 49:5 (ESV) ("And now the Lord says, he who formed me from the womb to be his servant . . . .");

41

*Jeremiah* 1:5 (ESV) ("'Before I formed you in the womb I knew you, and before you were born I consecrated you; I appointed you a prophet to the nations.'").

63.    Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because each is made in the image of God. *See Genesis* 1:26–27 (ESV) ("Then God said, 'Let us make man in our image, after our likeness. . . . So God created man in his own image, in the image of God he created him; male and female he created them.'" (footnote omitted)).

64.    Plaintiffs have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (ESV) ("'You shall not murder.'"); *Exodus* 21:22–23 (ESV) (imposing death penalty for killing of an unborn child); *Exodus* 23:7 (ESV) ("'[D]o not kill the innocent and righteous . . . .'"); *Genesis* 9:6 (ESV) ("'Whoever sheds the blood of man, by man shall his blood be shed, for God made man in his own image.'"); *Deuteronomy* 27:25 (ESV) ("Cursed be anyone who takes a bribe to shed innocent blood." (internal quotation marks omitted)); *Proverbs* 6:16–17 (ESV) ("There are six things that the Lord hates, seven that are an abomination to him: . . . hands that shed innocent blood . . . .").

65.    The Hebrew word for "abomination" in the text above is תּוֹעֵבָה (to`eba). The verbal form is "abhor," "loath," "detest," and "exclude." Twelve times the Book of Proverbs uses תּוֹעֵבָה in reference to an "abomination to the LORD." (יהוה or Yahweh). The word is also used in conjunction with the Ammonites and the Ashtoreth, the Sidonians, Chemosth, and Moab. Some of these nations sacrificed their

children to Baal. Indeed, *Jeremiah* 19:4–9, refers to the shedding of innocent blood by sacrificing children as the reason for judgement against Judah. Abortion is the modern-day sacrifice of children made in the image of God. Plaintiffs do not want to be part of such an "abomination." They do not want indirectly or directly to be in any way associated with abortion. To do so is abhorrent, loathsome, detestable, abominable to God. In short, to require these employees to inject a substance into their bodies that has any association (no matter how near or remote to abortion) is a sin against their Creator, their Lord, and their Savior.

66.    Plaintiffs also have sincerely held religious beliefs that it would be better to tie millstones around their necks and be drowned in the sea than to bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2 (ESV).

67.    Plaintiffs also have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15–20 (ESV) ("Do you not know that your bodies are members of Christ? . . . Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body.").

68.    Plaintiffs' religious beliefs compel them to not condone, support, justify, or benefit (directly or indirectly) from the taking of innocent human life via abortion, and that to do so is sinning against God.

43

69.     Plaintiffs' sincerely held religious beliefs preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

70.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20P age/COVID-19_Vaccine_Fetal_Cell_Handout.pdf.

71.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a retinal cell line that was **isolated from a terminated fetus in 1985**." La. Dep't of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/ You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (emphasis added).

72.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine.

Meredith Wadman, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full.

73.    The same is true of the Moderna and Pfizer-BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their mRNA vaccines. *See* La. Dep't of Public Health, *supra*.

74.    The North Dakota Department of Health likewise confirms: "Early in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." N.D. Health, *supra* (emphasis added).

75.    The Chief Scientific Officer and Senior Director of Worldwide Research for Pfizer have also been reported to demonstrate that its COVID-19 vaccine is derived from aborted fetal cells and have made statements that they wanted to keep that information from the public. *See PFIZER LEAKS: Whistleblower Goes On Record, Reveals Internal Emails from Chief Scientific Officer & Senior Director of Worldwide Research Discussing COVID Vaccine ... 'We Want to Avoid Having the Information on the Fetal Cells Floating Out There'*, ProjectVeritas (Oct. 6, 2021), https://www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-reveals-internal-emails-from-chief/.

76.     Specifically, Vanessa Gelman, Pfizer Senior Director of Worldwide Research: "From the perspective of corporate affairs, we want to avoid having the information on fetal cells floating out there…The risk of communicating this right now outweighs any potential benefit we could see, particularly with general members of the public who may take this information and use it in ways we may not want out there. We have not received any questions from policy makers or media on this issue in the last few weeks, so we want to avoid raising this if possible." *Id.*

77.     And, Philip Dormitzer, Pfizer's Chief Scientific Officer is reported as saying that he wanted to keep the information secret because of the objections that pro-life individuals, such as Plaintiffs in this action, would have: "HEK293T cells, used for the IVE assay, are ultimately derived from an aborted fetus. On the other hand, the Vatican doctrinal committee has confirmed that they consider it acceptable for Pro-Life believers to be immunized. Pfizer's official statement couches the answer well and is what should be provided in response to an outside inquiry." *Id.*

78.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

79.     Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit.

80.    Plaintiffs sincerely religious beliefs that their bodies are temples of the Holy Spirit and that they are to glorify God with their bodies lays the foundation for everything they do, consume, or inject into their bodies. From this foundation they make studied and reasonable decisions about what is good and what is not good or may not be good for their bodies. To knowingly abuse their bodies by engaging in a dishonorable act, or consuming or injecting a substance that will or may produce adverse consequences, is a sin against God. Based on this foundation, Plaintiffs would consume pure water over a similarly clear liquid they know or reasonably conclude is harmful to the body. This belief and other sincerely held religious beliefs are foundational to all their decisions and actions and are not limited to aborted fetal cell lines.

81.    Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

82.    Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (ESV) ("Nevertheless, I tell you the truth: it is to your advantage that I go away, for if I do not go away, the Helper will not come to you. But if I go, I will send him to you."); *John* 14:26 (ESV) ("But the Helper, the Holy Spirit, whom the Father will send in my name, he will teach you all things and bring to your remembrance all that I have said to you.").

83.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8–13 (ESV) ("And when he comes, he will convict the world concerning sin and righteousness and judgment . . . . When the Spirit of truth comes, he will guide you into all the truth, for he will not speak on his own authority, but whatever he hears he will speak, and he will declare to you the things that are to come.").

84.     Plaintiffs also have sincerely held religious beliefs that they will receive answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (ESV) ("If any of you lacks wisdom, let him ask God, who gives generously to all without reproach, and it will be given him."); *Mark* 11:24 (ESV) ("Therefore I tell you, whatever you ask in prayer, believe that you have received it, and it will be yours."); *Philippians* 4:6–7 (ESV) ("[D]o not be anxious about anything, but in everything by prayer and supplication with thanksgiving let your requests be made known to God. And the peace of God, which surpasses all understanding, will guard your hearts and your minds in Christ Jesus."); *1 John* 4:14–15 (ESV) ("And we have seen and testify that the Father has sent his Son to be the Savior of the world. Whoever confesses that Jesus is the Son of God, God abides in him, and he in God.").

85.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decisions to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted by the Holy Spirit that

accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

86.    Plaintiffs have sincerely held religious beliefs that compel them to follow the teachings of the Holy Spirit, who has not given them peace, comfort, or admonition to accept any of the three currently available COVID-19 vaccines.

87.    Plaintiffs have sincerely held religious beliefs that they are being guided and instructed by the Holy Spirit not to accept any of the three currently available COVID-19 vaccines and that it would be a sin against God to do so.

88.    Plaintiff CAPTAIN is of the Islamic faith whose sincerely held religious beliefs that require him to abstain from participation in that which is *haram* – forbidden – including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions. CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally-tainted COVID shots

### C.    PLAINTIFFS' WILLINGNESS TO COMPLY WITH SAFE AND TESTED ALTERNATIVES TO UNIVERSAL VACCINATION AS ACCOMMODATION OF THEIR SINCERELY HELD RELIGIOUS BELIEFS.

89.    Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate.

90.    Plaintiffs have all informed their respective commanding officers and civilian supervisors that they are willing to comply with reasonable conditions that

were sufficient for nearly two years, permitting them to fulfill their sworn duties and faithful service to their employers and a grateful nation, and which reasonable conditions continued from the FDA's Emergency Use Authorization (EUA) of the first COVID-19 vaccine in December 2020, until August 24, 2021 for military servicemembers and September 9 for federal civilian employees and contractors. Nothing has changed except for the Mandate, and thus the past proves a good example of present and future reasonable accommodations.

91.    The accommodations which have been ongoing for nearly two years are certainly reasonable under the accumulating scientific evidence. Indeed,

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added); *see also Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR* (July 30, 2021), https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (noting "**the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people**" (emphasis added).)

92.    Other reasonable protocols beyond the currently-available COVID vaccines remain sufficient to prevent the spread of COVID-19 among military servicemembers, federal employees, and federal contractors, and constitute a reasonable alternative to mandatory, universal vaccination as an accommodation of sincerely held religious beliefs.

93.    The United States District Court for the Western District of Louisiana recently issued a TRO against a medical school for the school's failure to grant religious exemptions when other reasonable accommodations were available and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).

94.    The United States District Court for the Western District of Michigan issued a TRO against a university for its failure to allow students with religious objections to vaccination to participate in athletics and other extracurricular activities when other reasonable alternatives were available as a reasonable accommodation for their religious beliefs. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021). The Sixth Circuit Court of Appeals affirmed that preliminary injunction in its order refusing to stay the preliminary injunction. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021).

95.    The United States District Court for the Northern District of New York and the Second Circuit Court of Appeals have both entered injunctions against enforcement of New York's COVID-19 vaccine mandate on healthcare workers that expressly excluded any religious exemption. On October 12, 2021, the Northern District of New York entered a preliminary injunction enjoining state officials from enforcing the mandate. *See Dr. A. v. Hochul*, No. 1:21-CV-1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021). The court had previously entered a TRO to the same effect. *See* 2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021). On September 30, in between the Northern District's TRO and preliminary injunction, the Second Circuit gave its imprimatur to the *Dr. A.* TRO in *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021). In *We The Patriots*, the Second Circuit issued an injunction pending appeal against New York's mandate, enjoining state officials from enforcing it "in a manner that would violate the terms of the temporary restraining order issued in *Dr. A v. Hochul*."

96.    The United States Military Health System allows three different types of permanent *medical* exemptions from compulsory immunizations: (1) "Determination by a medical provider that further vaccination will seriously endanger patient's health;" (2) "Medical, Reactive exemption: Previously severe reaction after specific vaccine;" and (3) "Medical, Immune exemption: Evidence of existing immunity (e.g., by serologic antibody test, documentation of previous infection or natural infection presumed)." *See* Military Health System, *Immunization Exemption Guidance*, Health.mil,                https://www.health.mil/Military-Health-Topics/Health-

Readiness/Immunization-Healthcare/Clinical-Consultation-Services/Exemption-Guidance (last visited October 14, 2021).

97.    Several Plaintiffs and countless other class members were previously infected with COVID-19, have serologic test results demonstrating natural antibodies and immunity to COVID-19, and otherwise qualify for the exemptions ostensibly available for servicemembers. Plaintiffs, however, have been denied the ability to even requests the officially available exemptions.

**D.    PLAINTIFFS' REQUESTS FOR AN ACCOMMODATION FROM THE MANDATORY COVID-19 VACCINE POLICY.**

98.    On September 7, 2021, NAVY SEAL 1 submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY SEAL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY SEAL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that NAVY SEAL 1's request was sincere. NAVY SEAL 1's Chaplain forwarded NAVY SEAL 1's request to the command. After review, NAVY SEAL 1's request for a religious exemption and accommodation was denied, and he was preemptively removed from his position as Platoon Chief. NAVY SEAL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

99.    On September 14, 2021, NAVY SEAL 2 submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY SEAL 2's request for a religious exemption and accommodation detailed NAVY SEAL 2's religious beliefs and practices that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY SEAL 2's request for a religious accommodation was supported by a letter from a religious leader, which demonstrated the sincerity of NAVY SEAL 2's personal beliefs. NAVY SEAL 2's commander noted that NAVY SEAL 2's religious beliefs were sincere and strongly held, but recommended that his request be disapproved. NAVY SEAL 2's request for an accommodation has been forwarded to the officers responsible for making the final determination, but he has been informed that his request will not be approved because of his direct commander's recommendation of denial. NAVY SEAL 2 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination

100.    On September 15, 2021, NAVY EOD OFFICER submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY EOD OFFICER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY EOD OFFICER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial,

dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

101.    On September 16, 2021, LIEUTENANT COLONEL 1, United States Marine Corps, submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. LIEUTENANT COLONEL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LIEUTENANT COLONEL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that LIEUTENANT COLONEL's request was made from a position of "absolute sincerity." LIEUTENANT COLONEL 1's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

102.    LIEUTENANT COLONEL 2, United States Marine Corps, submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of her sincerely held beliefs. LIEUTENANT COLONEL 2 articulated to his command that she has and exercises sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. LIEUTENANT COLONEL 1's request for a

religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination

103.    On September 16, 2021, ARMY RANGER submitted to the United States Army a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. ARMY RANGER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. ARMY RANGER met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and who found that ARMY RANGER's request was sincere. ARMY RANGER also submitted a pastor's verification letter with his request. ARMY RANGER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

104.    On September 9, 2016, LANCE CORPORAL submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. LANCE CORPORAL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently

available COVID-19 vaccines. LANCE CORPORAL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

105.   On October 4, 2021, NATIONAL GUARDSMAN submitted to the Virginia Army National Guard a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NATIONAL GUARDSMAN articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NATIONAL GUARDSMAN's request for a religious exemption and accommodation has not been approved, and he has already been removed from his scheduled deployment because of his request. NATIONAL GUARDSMAN additionally faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination. NATIONAL GUARDSMAN has also been removed from his scheduled deployment because of his request for an accommodation and exemption.

106.   LIEUTENANT, United States Coast Guard submitted a request for a religious accommodation and exemption from the United States Coast Guard outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines. Although she is currently under a temporary medical exemption while

breastfeeding her child born earlier this year and undergoing testing for allergies to vaccine components, LIEUTENANT has been informed that should these waivers be denied, she will may face dishonorable discharge, loss of benefits, and other disciplinary measures if she does not accept the COVID-19 vaccine. LIEUTENANT has also been informed that even if the medical waivers are approved, she may be determined medically unfit for service and discharged.

107.    On September 28, 2021, COLONEL submitted to the United States Army a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

108.    TECHNICAL SERGEANT submitted to the United States Air Force a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of her sincerely held beliefs. TECHNICAL SERGEANT articulated to her command that she has and exercises sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines.

58

TECHNICAL SERGEANT also requested and was granted a temporary medical exemption because she is seven months pregnant, which will expire at the end of her pregnancy. TECHNICAL SERGEANT's request for a religious exemption and accommodation has not been approved, and she faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs against COVID-19 vaccination.

109.    On October 2, 2021, DEFENSE DEPARTMENT CONTRACTOR submitted to the United States Department of Defense a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. DEFENSE DEPARTMENT CONTRACTOR's request for a religious accommodation and exemption outlined his sincerely held religious objections to receiving any of the COVID-19 vaccines because of their connections to aborted fetal cell lines. DEFENSE DEPARTMENT CONTRACTOR's request was supported by a Chaplain's and supervisor's recommendations. DEFENSE DEPARTMENT CONTRACTOR's request has not been approved, and he has been informed that it is likely to be denied. DEFENSE DEPARTMENT CONTRACTOR faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

110.    FEDERAL CIVILIAN ENGINEER CONTRACTOR would like to submit a request for religious exemption from the Federal COVID-19 Vaccine

Mandate as an accommodation of his sincerely held beliefs, but has been deprived of guidance on how and to whom to submit such a request. FEDERAL CIVILIAN ENGINEER CONTRACTOR has also been informed that there is little chance such requests will be approved. FEDERAL CIVILIAN ENGINEER CONTRACTOR faces termination for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

111.    FEDERAL CIVILIAN CONTRACTOR EMPLOYER would like to submit a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs, and to be able to provide religious exemptions and accommodations to his employees who have sincerely held religious objections to the COVID-19 vaccines, but has been deprived of guidance on how and to whom to submit such a request. Given the Mandate's requirement that all employees of federal government contractors and subcontractors receive a COVID-19 vaccine, FEDERAL CIVILIAN CONTRACTOR EMPLOYER faces termination of his current government contracts and disqualification from future contracts as a result of his exercising and seeking accommodation of his and his employees' sincerely held religious beliefs against COVID-19 vaccination.

112.    FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is not married yet, but hopes to be one day, and in that relationship to have a child or children as God blesses her. She believes that "children are an heritage of the Lord," and that bearing a child or children in the context of marriage fulfils a Divine mandate.

FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is aware that no long-term studies have been performed on any of the COVID shots regarding their impact on female fertility, and given her religious beliefs about marriage and childbearing, cannot receive any of the COVID shots. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE fears being placed in the position of having to choose between her job and her faith.

113.    DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH requested a religious exemption and accommodation from Defendants' COVID-19 vaccine mandate on federal civilian contractors, and his request was denied. DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH was given until October 15 to accept one of the vaccine or face termination.

114.    While many Plaintiffs' and class members' religious exemption requests have already been denied, the still pending requests have been effectively denied, as Plaintiffs and class members with pending requests have been threatened with dishonorable discharge, court martial, termination, or other life-altering disciplinary measures for merely seeking accommodation of their sincerely held religious beliefs, and some of these Plaintiffs have been informed by their superiors that **no religious exemption or accommodation will be given so there is no point in even making a request**.

115.    For example, on October 14, 2021, Vice Admiral William Galinis, Commander, Naval Sea Systems Command (NAVSEA), sent a warning to his entire

command, comprising more than 85,000 civilian and military personnel: "The Executive Order mandating vaccinations for all federal employees has provided clear direction. We are moving quickly toward a workforce where vaccinations are a condition of employment. Frankly, if you are not vaccinated, you will not work for the U.S. Navy."

   **E.    THE ONLY COVID-19 VACCINES AVAILABLE IN THE UNITED STATES ARE ADMINISTERED UNDER EMERGENCY USE AUTHORIZATION BECAUSE THERE IS NO FDA APPROVED COVID-19 VACCINE CURRENTLY AVAILABLE IN THE UNITED STATES.**

116.    Despite the misreporting, there is no COVID-19 vaccine available in the United States that has received full FDA licensing and approval.

117.    On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. *See* Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), https://www.fda.gov/media/151710/download ("BioNTech Letter"); Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021), https://www.fda.gov/media/150386/download ("Pfizer Letter"). (A true and correct copy of the BioNTech Letter is attached hereto as **EXHIBIT E** and incorporated herein. A true and correct copy of the Pfizer Letter is attached hereto as **EXHIBIT F** and incorporated herein.)

118.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization (EUA) for the Pfizer-BioNTech COVID-19

Vaccine. (Pfizer Letter at 1.) It also notes that the EUA was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

119.    The Pfizer Letter also makes clear that there are scientific, manufacturing, and **legal** differences between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved BioNTech COMIRNATY, COVID-19 Vaccine, mRNA. (Pfizer Letter at 2 n.9, 3 n.10.)

120.    Specifically, the FDA stated that although COMIRNATY was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only authorized under the EUA. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID-19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, **this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses**. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (emphasis added).

121.    All existing vials of the Pfizer-BioNTech COVID-19 Vaccine remain available only under the authorization of the EUA. (Pfizer Letter at 2 n.9.)

122.    On information and belief, the existing vials of Pfizer-BioNTech COVID-19 Vaccine in the United States number in the millions, and that all of these EUA vaccine doses will be administered **before any does of the fully approved**

**COMIRNATY**, meaning the fully approved COMIRNATY will not be available for administration in the United States in the near future.

123.    There are currently no available doses of COMIRNATY in the United States, and **COMIRNATY is not being manufactured for production or distribution in the United States at this time**.

124.    **In fact, the FDA Pfizer Letter plainly states that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population**." (Pfizer Letter at 6 n.12 (emphasis added).)

125.    Thus, the FDA has admitted and acknowledged that COMIRNATY is not available for the population in the United States, and thus extended the EUA for the Pfizer-BioNTech Covid-19 Vaccine. (*Id.*)

126.    Indeed, in order for the FDA to have extended the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech Vaccine**. (*See* Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (emphasis added).)

127.    Moreover, though Secretary Austin stated that the Federal COVID-19 Vaccine Mandate "will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved

labeling and guidance," (Ex. D at 1), additional military documents reveal that the Department of Defense is not following its own directive and is, instead, using EUA vaccines because there is no FDA approved vaccine available. In a Memorandum for Assistant Secretary of the Army (Manpower and Reserve Affairs), Assistant Secretary of the Navy (Manpower and Reserve Affairs), Assistant Secretary of the Air Force (Manpower and Reserve Affairs), and the Director of the Defense Health Agency, Terry Adirim, Acting Assistant Secretary of Defense for Health Affairs, admitted that the Department of Defense was not administering a fully licensed and approved vaccine to the heroes in the United States Armed Forces, but was instead skirting federal law by mandating an EUA vaccine instead. (A true and correct copy of Acting Assistant Secretary Adirim's Memorandum is attached hereto as **EXHIBIT G** and incorporated herein.)

128.    Specifically, the Memorandum stated that Department of Defense health care providers "**should use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine**." (Ex. G at 1 (emphasis added).)

129.    Thus, the only currently available COVID-19 vaccines are authorized under EUA only, and therefore cannot be mandated by Secretary Austin. (*See infra* Count I.)

130.    The Federal Food, Drug, And Cosmetic Act provides that

**subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the

introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. § 360bbb-3(a)(1) (emphasis added) [hereinafter EUA Statute].

131. As an essential part of the explicit statutory conditions for EUA**, the EUA Statute mandates that all individuals to whom the EUA product may be administered be given the option to accept or refuse administration of the product**:

With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:

. . . .

(ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

(I) that the Secretary has authorized the emergency use of the product;

(II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

(III) **of the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I)–(III) (emphasis added).

132. The statutorily required Fact Sheets for each of the EUA COVID-19 vaccines acknowledge that individuals cannot be compelled to accept or receive the

vaccine. *See, e.g.*, Pfizer-BioNTech, *Fact Sheet for Recipients and Caregivers* (June 25, 2021), https://www.fda.gov/media/144414/download ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)).

133. Because all COVID-19 vaccines available in the United States are subject to the EUA Statute restrictions and limitations, all individuals—**including military servicemembers, federal employees, and federal civilian contractors**—have the explicit right under the EUA Statute to accept or refuse administration of the products.

## F.    IRREPARABLE HARM TO PLAINTIFFS.

134. Because of Defendants' refusal to grant Plaintiffs merited religious exemptions from the Federal COVID-19 Vaccine Mandate, Plaintiff servicemembers face the unconscionable choice of violating their sincerely held religious beliefs or facing court martial and dishonorable discharge from their faithful service to the Nation or, in the case of Plaintiff civilian employees and contractors, termination from their employment and contracts.

135. As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

136. As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between

maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

137.   As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in the United States Armed Forces, federal employment, and federal contracting.

138.   Military servicemember Plaintiffs also face the prospect of irreparable medical injury as a result of the Federal COVID-19 Vaccine Mandate. A recent study conducted by the Department of Defense found "**higher than expected rates of heart inflammation following receipt of COVID-19 vaccines**" among military servicemembers. *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html (emphasis added).

In fact, on or about June 29, 2021, Defendants knew that the mRNA vaccines would causing myocarditis/pericarditis (a potentially serious and deadly heart inflammation) in certain members of the military, particularly in males 30 and under. In a study conducted by United States Army, Navy, and Air Force physicians specifically found: A total of 23 male patients (22 currently serving in the military and 1 retiree; median [range] age, 25 [20-51] years) **presented with acute onset of marked chest pain within 4 days after receipt of an mRNA COVID-19 vaccine. All military members were previously healthy with a high level of fitness**. Seven received the BNT162b2-mRNA vaccine and 16 received the mRNA-1273 vaccine. A total of 20 patients had symptom onset following the second dose of an appropriately spaced 2-dose series. All patients had significantly elevated cardiac troponin levels. Among 8 patients who underwent cardiac magnetic resonance imaging within the

acute phase of illness, all had findings consistent with the clinical diagnosis of myocarditis. . . . **While the observed number of myocarditis cases was small, the number was higher than expected among male military members after a second vaccine dose**.

Jay Montgomery, et al., *Myocarditis Following Immunization With mRNA COVID-19 Vaccines in Members of the US Military*, Journal of American Medical Association Network (June 29, 2021), *available at* https://jamanetwork.com/journals/jamacardiology/fullarticle/2781601 (emphasis added).

139.    Dr. Matthew Oster, a member of the President's COVID-19 Task Force, confirmed the link between the COVID-19 vaccines and myocarditis, stating: "It does appear that mRNA vaccines may be a new trigger for myocarditis yet it does have some different characteristics." Jackie Salo, *COVID-19 mRNA vaccines likely linked to rare heart condition in kids: CDC panel*, (June 23, 2021), https://nypost.com/2021/06/23/covid-19-vaccines-from-pfizer-moderna-likely-linked-to-rare-heart-condition-cdc-panel/.

140.    Indeed, it is now well confirmed by the CDC and other studies that males 30 and under have an unacceptable risk of developing myocarditis as a result of the COVID-19 vaccines. *See* **EXHIBIT H,** Declaration of Dr. Peter McCullough.

141.    The COVID-19 genetic vaccines (Pfizer, Moderna, J&J) skipped testing for genotoxicity, mutagenicity, teratogenicity, and oncogenicity. In other words, it is unknown whether or not these products will change human genetic material, cause birth defects, reduce fertility, or cause cancer. (Ex. H, McCullough Decl. ¶16.)

69

142.    The Pfizer, Moderna, and JNJ vaccines are considered "genetic vaccines", or vaccines produced from gene therapy molecular platforms which according to US FDA regulatory guidance are classified as gene delivery therapies and should be under a 15-year regulatory cycle with annual visits for safety evaluation by the research sponsors. FDA. Food and Drug Administration. (*Id.* ¶17.)

143.    The FDA has "advised sponsors to observe subjects for delayed adverse events for as long as 15 years following exposure to the investigational gene therapy product, specifying that the long-term follow-up observation should include a minimum of five years of annual examinations, followed by ten years of annual queries of study subjects, either in person or by questionnaire." (emphasis added) Thus, the administration of the Moderna, Pfizer, and JNJ vaccines should not be undertaken without the proper consent and arrangements for long-term follow-up which are currently not offered in the US. (See, EUA briefing documents for commitments as to follow up: Moderna , Pfizer , J&J ). They have a dangerous mechanism of action in that they all cause the body to make an uncontrolled quantity of the pathogenic wild-type spike protein from the SARS-CoV-2 virus for at least two weeks probably a longer period based on the late emergence of vaccine injury reports. This is unlike all other vaccines where there is a set amount of antigen or live-attenuated virus. This means for Pfizer, Moderna, and J&J vaccines it is not predictable among patients who will produce more or less of the spike protein. The Pfizer, Moderna, and JNJ vaccines because they are different, are expected to produce different libraries of limited antibodies to the now extinct wild-type spike protein. We know the spike protein

produced by the vaccines is obsolete because the 17th UK Technical Report on SARS-CoV-2 Variants issued June 25, 2021, and the CDC June 19, 2021, Variant Report both indicate the SARS-CoV-2 wild type virus to which all the vaccines were developed is now extinct. (*Id.* ¶18.)

144.    The spike protein itself has been demonstrated to injure vital organs such as the brain, heart, lungs, as well as damage blood vessels and directly cause blood clots. Additionally, because these vaccines infect cells within these organs, the generation of spike protein within heart and brain cells, in particular, causes the body's own immune system to attach to these organs. This is abundantly apparent with the burgeoning number of cases of myocarditis or heart inflammation among individuals below age 30 years. (*Id.*)

145.    Because the US FDA and CDC have offered no interpretation of overall safety of the COVID-19 vaccines according to the manufacturer or as a group, nor have they offered methods of risk mitigation for these serious adverse effects which can lead to permanent disability or death, no one should be pressured, coerced, receive the threat or reprisal, or be mandated to receive one of these investigational products against their will. Because the vaccine centers, CDC, FDA, and the vaccine manufacturers ask for the vaccine recipient to grant indemnification on the consent form before injection, all injuries incurred by the person are at their own cost which can be prohibitive depending on the needed procedures, hospitalizations, rehabilitation, and medications. (*Id.*)

146.    The COVID-19 public vaccination program operated by the CDC and the FDA is a clinical investigation and under no circumstance can any person receive pressure, coercion, or threat of reprisal on their free choice of participation. Violation of this principle of autonomy by any entity constitutes reckless endangerment with a reasonable expectation of causing personal injury resulting in damages. (*Id.* ¶21.)

147.    The total safety reports in VAERS for all vaccines per year up to 2019 was 16,320. The total safety reports in VAERS for COVID-19 Vaccines alone through October 1, 2021, is 778,683. Based on VAERS as of October 1, 2021, there were 16,310 COVID-19 vaccine deaths reported and 75,605 hospitalizations reported for the COVID-19 vaccines (Pfizer, Moderna, JNJ). By comparison, from 1999, until December 31, 2019, VAERS received 3167 death reports (158 per year) adult death reports for all vaccines combined. Thus, the COVID-19 mass vaccination is associated with at least a 39-fold increase in annualized vaccine deaths reported to VAERS. (*Id.* ¶28.)

148.    COVID-19 vaccine adverse events account for 98% of all vaccine-related AEs from December 2020 through the present in VAERS. (*Id.* ¶29.)

149.    The COVID-19 vaccines are not safe for general use and cannot be deployed indiscriminately or supported, recommended, or mandated among any group. (*Id.* ¶30.)

150.    There are emerging trends showing that the vaccine is especially risky for those 12- 29 in my expert medical opinion with complications in the cardiovascular,

neurological, hematologic, and immune systems. (See, Rose J, et al). Increasingly the medical community is acknowledging the possible risks and side effects including myocarditis, Bell's Palsy, Pulmonary Embolus, Pulmonary Immunopathology, and severe allergic reaction causing anaphylactic shock. See Chien-Te Tseng, Elena Sbrana, Naoko Iwata- Yoshikawa, Patrick C Newman, Tania Garron, Robert L Atmar, Clarence J Peters, Robert B Couch, Immunization with SARS coronavirus vaccines leads to pulmonary immunopathology on challenge with the SARS virus, https://pubmed.ncbi.nlm.nih.gov/22536382/ (last visited June 21, 2021); Centers for Disease Control and Prevention, Allergic Reactions Including Anaphylaxis After Receipt of the First Dose of Pfizer-BioNTech COVID-19 Vaccine—United States, December 14– 23, 2020 (Jan 15, 2021). (*Id.* ¶31.)

151.  The Centers for Disease Control has held emergency meetings on this issue and the medical community is responding to the crisis. It is known that myocarditis causes injury to heart muscle cells and may result in permanent heart damage resulting in heart failure, arrhythmias, and cardiac death. These conditions could call for a lifetime need for multiple medications, implantable cardio defibrillators, and heart transplantation. Heart failure has a five-year 50% survival and would markedly reduce the lifespan of a child or young adult who develops this complication after vaccine-induced myocarditis. (*Id.* ¶32.)

152.  COVID-19 vaccine-induced myocarditis has a predilection for young males below age 30 years. The Centers for Disease Control has held emergency meetings on this issue and the medical community is responding to the crisis and the

73

US FDA has issued a warning on the Pfizer and Moderna vaccines for myocarditis. In the cases reviewed by the CDC and FDA, 90% of children with COVID-19 induced myocarditis developed symptoms and clinical findings sufficiently severe to warrant hospitalization. Because this risk is not predictable and the early reports may represent just the tip of the iceberg, no individual under age 30 under any set of circumstances should feel obliged to take this risk with the current genetic vaccines particularly the Pfizer and Moderna products. (*Id.* ¶33.)

153.    Multiple recent studies and news reports detail people 18-29 dying from myocarditis after receiving the COVID-19 vaccine. According to the CDC, 475 cases of pericarditis and myocarditis have been identified in vaccinated citizens aged 30 and younger. See FDA, Vaccines and Related Biological Products Advisory Committee June 10, 2021, Meeting Presentation. The FDA found that people 12-24 account for 8.8% of the vaccines administrated, but 52% of the cases of myocarditis and pericarditis were reported. (*Id.* ¶¶34-35.)

154.    The CDC recently released data stating that there have been 267 cases of myocarditis or pericarditis reported after receiving one dose of the COVID-19 vaccines and 827 reported cases after two doses through June 11. There are 132 additional cases where the number of doses received is unknown. Id. There have been 2466 reported cases of myocarditis that have occurred, and the median age is thirty. (*Id.* ¶37.) And, the CDC just announced that the vaccine is "likely linked" to myocarditis. Advisory

Board, CDC panel reports 'likely association' of heart inflammation and mRNA COVID-19 vaccines in young people. (*Id.* ¶36.)

155.    The irreparable harm to Plaintiffs and the class members they represent is incalculable, unconscionable, and unconstitutional. As the Declaration of Nay Chaplain (attached hereto as **EXHIBIT I** and incorporated herein) demonstrates, the military heroes of this Nation are under inordinate strain from this forced mandate that violates their conscience, and it is having tremendous mental health effects, including a large number of military suicides. (Ex. I, ¶¶6-32.) The Declaration of COAST GUARD LIEUTENANT (attached hereto as **EXHIBIT J** and incorporated herein) likewise demonstrates immeasurable and irreparable injury.

## CLASS ALLEGATIONS

156.    Plaintiffs satisfy the requirements Fed. R. Civ. P. 23(a) because the class is so numerous that joinder of all members is impracticable, each member's claims involve common questions of law and fact, the claims of the representatives are typical of and identical to the claims of the other members of the class, and the representatives here will fairly and adequately protect the interests of the class in having the primarily legal questions addressed by this Court in an expeditious manner. Between Active Duty Military and Reserves, the United States Armed Forces comprise almost 2.3 million individuals, the federal government directly employees approximately 2.1 million, and federal contractors and subcontractors total about 3.7 million.

157.    Plaintiffs have typicality with the other members of the class of military servicemembers, civilian federal employees, and civilian federal contractors who have

been denied religious exemption from the Federal COVID-19 Vaccine Mandate, estimated to number in the thousands or even tens of thousands, and who are threatened with the unconscionable choice between conformance with their sincerely held religious convictions adverse employment action.

158.   Plaintiffs have commonality with the other members of the class because they are all members of the United States Armed Forces, civilian federal employees, or civilian federal contractors subject to the Federal COVID-19 Vaccine Mandate.

159.   Plaintiffs' claims in this Court are representative of the claims of other class members and involve questions of fact and law that are common to all class members, including, *inter alia*,

(a) whether the EUA Statute requires that Plaintiffs be given the option to refuse a COVID-19 vaccine because there is currently no FDA approved COVID-19 vaccine available;

(b) whether Defendants violate the First Amendment to the United States Constitution by mandating that Plaintiffs accept and receive a COVID-19 vaccine regardless of whether Plaintiffs' and the other class members' sincerely held religious beliefs compel them to abstain from acceptance or receipt of the three currently available COVID-19 vaccines; and

(c) whether the federal Religious Freedom Restoration Act (RFRA) requires Defendants and all those in active concert with them to provide accommodations and exemptions to those Plaintiffs with sincerely held religious convictions that compel

them to abstain from receiving one of the three currently available COVID-19 vaccines.

160.   Plaintiffs' claims are representative and common among all class members because the injury sustained—Defendants' refusals to grant exemption and accommodation for sincerely held religious objections to the COVID-19 vaccines and the resulting adverse employment actions—are categorically identical. Indeed, Plaintiffs and the other members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

161.   Plaintiffs will fairly and adequately protect the interests of the class because they are seeking a temporary restraining order, preliminary and permanent injunctive relief, and declaratory relief against enforcement of the Federal COVID-19 Vaccine Mandate and Defendants' refusals to entertain or grant religious exemptions and accommodations which will provide relief to all class members.

162.   Plaintiffs likewise satisfy the requirements of Fed. R. Civ. P. 23(b) because Defendants have acted in a manner that applies to all members of the class with respect to the Federal COVID-19 Vaccine Mandate, and have refused to grant religious accommodations to the entire group of class members who have sincerely held religious objections to receiving a COVID-19 vaccine under the Mandate. Fed. R. Civ. P. 23(b)(2).

163.   Additionally, Plaintiffs' requested injunctive and declaratory relief would appropriately protect of the entire class as a whole. Fed. R. Civ. P. 23(b)(2).

164.    Moreover, Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23(b) because the common questions of law and fact applicable to the class members' claims predominate over individualized questions pertaining to individual class members. Fed. R. Civ. P. 23(b)(3).

165.    Adjudication of Plaintiffs and the other class members' claims are more fairly and efficiently adjudicated by a class action, as the claims for religious accommodation and exemption from the Federal COVID-19 Vaccine Mandate are virtually identical among all class members, the relevant facts applicable to each individual class member are substantially similar, and the applicable substantive law for the class members' claims is identical in all respects. Fed. R. Civ. P. 23(b)(3).

**COUNT I – VIOLATION OF THE EMERGENCY USE AUTHORIZATION PROVISIONS OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT, 21 U.S.C. § 360bbb-3**

166.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-165 as if fully set forth herein.

167.    The Federal Food, Drug, And Cosmetic Act provides that

**subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. § 360bbb-3(a)(1) (emphasis added).

168.    For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

169. The Emergency Use Authorization Statute further provides the limitations on when the Secretary may authorize the emergency use of an unapproved product for use in interstate commerce, and specifically limits such authorization to circumstances where the Secretary of Homeland Security has determined certain emergencies exits, where the Secretary of Defense has determined that certain military emergencies exist, where the Secretary of the Department of Health and Human services has determined that certain public health emergencies exist, and where there has been some identification of a material threat pursuant to other provisions of the United States Code. *See* 21 U.S.C. § 360bbb-3(b)(1)(A)-(D).

170. The Secretary's Emergency Use Authorization terminates whenever the circumstances described in 21 U.S.C. § 360bbb-3(b)(1)(A)-(D) cease to exist or where the product approved for Emergency Use under the statute receives a change in approval status. 21 U.S.C. § 360bbb-3(b)(2)(A)(i)-(ii).

171. As an essential part of the explicit statutory conditions for EUA**, the EUA Statute mandates that all individuals to whom the EUA product may be administered be given the option to accept or refuse administration of the product**:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:
>
> . . . .
>
> (ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

(I) that the Secretary has authorized the emergency use of the product;

(II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

(III) **of the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I)–(III) (emphasis added).

172.    Consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available COVID-19 vaccines specifically states – **as required by the Emergency Use Authorization Statute** – that individuals have the right to refuse administration of the COVID-19 vaccine. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Moderna COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Pfizer- BioNTech COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Janssen (Johnson & Johnson) COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein.

173.    Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the

vaccine. (*See* Exhibit H at 4 ("**It is your choice to receive or not to receive the Moderna COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Exhibit I at 5 ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Exhibit J at 5 ("**It is your choice to receive or not to receive the Janssen COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added))).)

174.    "Congress has prohibited the administration of investigational drugs to service members without their consent." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004).

175.    There is a very strict mechanism under which any military exception to the EUA statute may be deployed, and neither have occurred here.

176.    First, the President can waive the informed consent requirement, but that Presidential waiver must be in writing and demonstrate that the President has determined "that obtaining consent is not in the interests of national security."

177.    The strict criteria laid out in the statutory framework demonstrate the limited scope of the exceptions to the informed consent requirement. To start, the initial emergency declaration by the HHS Secretary must be based on one of four statutorily listed justifications – none of which apply here. The first requires the Secretary of Defense to find a **domestic emergency**, or significant potential for a

domestic emergency, based on heightened risk of attack with a **biological, chemical, radiological, or nuclear agent**. 21 U.S.C.A. § 360bbb–3(b)(1)(A) ("A "determination by the Secretary of Homeland Security that there is a domestic emergency, or a significant potential for a domestic emergency, involving a heightened risk of attack with a biological, chemical, radiological, or nuclear agent or agents.").

178.    The second requires a finding that there is a **military emergency** involving a heightened risk to US military forces of an attack with a **biological, chemical, radiological, or nuclear agent**, or an agent that may cause an imminently life-threatening and specific risk to US military forces. 21 U.S.C. § 360bbb-3(b)(1)(B) ("A "determination by the Secretary of Defense that there is a **military emergency**, or a significant potential for a military emergency, involving a heightened risk to United States military forces, including personnel operating under the authority of title 10 or title 50, of **attack with a biological, chemical, radiological, or nuclear agent or agents**; or an agent or agents that may cause, or are otherwise associated with, **an imminently life-threatening and specific risk** to United States military forces." (emphasis added)).

179.    The third requires a finding that there is a public health emergency, or significant potential for a public health emergency that affects national security or the health and security of US citizens abroad that involves a **biological, chemical, radiological, or nuclear agent or a disease or condition attributable to one of those agents**. 21 U.S.C. §360bbb-3(b)(1)(C) (A "determination by the Secretary that there is

a **public health emergency**, or a significant potential for a public health emergency, **that affects**, or has a significant potential to affect, **national security** or the health and security of United States citizens living abroad, **and** that involves **a biological, chemical, radiological, or nuclear agent or agents, or a disease or condition that may be attributable to such agent or agents**." (emphasis added)).

180.    The fourth requires the identification of a material threat involving **chemical, biological, radiological, and nuclear agents** sufficient to affect national security or the health and security of US citizens living abroad. 21 U.S.C. § 360bbb-3(b)(1)(D) ("The "identification of a **material threat** [involving chemical, biological, radiological, and nuclear agents] pursuant to section 319F–2 of the Public Health Service Act [42 U.S.C. 247d–6b] sufficient **to affect national security** or the health and security of United States citizens living abroad." (emphasis added)).

181.    Under the above statute, there is no legal basis on which the President may waive consent for the COVID-19 vaccines for the military. Indeed, he has not done so because he has no statutory authority under these facts to waive the EUA requirements for the military.

182.    Even after the HHS Secretary establishes that one of the four criteria are satisfied, then under § 360bbb–3 the HHS Secretary then must make a separate determination that an "agent" referred to in the declaration can cause a serious or life-threatening disease or condition **and** that based on the scientific evidence available for the product authorized under the EUA (i) it may be effective in diagnosing, treating,

or preventing the disease or serious life-threatening disease, (ii) the known and potential benefits outweigh the risks; (iii) there is no adequate, approved, and available alternative to the product authorized under the EUA; (iv) **in the case of a military emergency based on a biological, chemical, radiological, or nuclear agent, the Secretary of Defense made the emergency use request**; and (v) other criteria established by regulation are satisfied.

183.    None of the foregoing criteria has been satisfied.

184.    Defendants have ignored their obligations under the EUA Statute.

185.    There has been no Presidential declaration sufficient to invoke the consent exceptions of the EUA statute.

186.    There has been no domestic emergency, military emergency, public health emergency, or material threat of a biological, chemical, radiological, or nuclear agent, or a disease attributable to one of those conditions.

187.    As such, Defendants are prohibited by the EUA statute from mandating that any Plaintiffs or similarly situated military servicemembers receive or accept one of the COVID-19 vaccines.

188.    Put simply, the Emergency Use Authorization Statute provides that, **as a condition of receiving authorization for emergency use, <u>ALL individuals to whom the EUA product may be administered are given the right to accept or refuse administration of the product – and this includes members of the military. And, of**</u>

**course, the EUA right to accept or refuse applies and cannot be waived respecting the federal employees and federal civilian contractor Plaintiffs.**

189.   The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

190.   Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, **including Plaintiffs**, be given the right to accept or refuse administration of the product.

191.   Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendants from making the COVID-19 vaccines mandatory.

192.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

193.   Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

194.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–165 above as if fully set forth herein.

195.   The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from abridging Plaintiffs' rights to free exercise of religion.

196.   Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

197.   Plaintiffs have and exercise sincerely held religious beliefs (articulated *supra* Section B) which compel them to abstain from receiving or accepting any of the currently available COVID-19 vaccines.

198.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines.

199.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

200.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

201.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

202.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

203.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

204.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs. Regarding the federal employee and federal civilian contractor Plaintiffs, Defendant Biden imposed the Vaccine Mandate on them while exempting Congress, the Internal Revenue Service (IRS) and the United States Postal Service. Indeed, a certain husband and wife are both federal employees. One works for the IRS while the other works for the Veterans Administration (VA). Although husband and wife are working as federal employees, one is under the Vaccine Mandate, and one is not. The VA has used a simple one-page form on which an employee merely checks a box to request a religious exemption. Other federal employees are subject to a more

burdensome process or have received no guidance on submitting religious exemption requests. The civilian federal contractors face a deadline of November 22, but none have received any guidance on whether or where they might file a request for religious exemption and accommodation.

205.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of Plaintiffs while permitting the more favored medical exemptions to be granted.

206.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

207.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

208.   There is no legitimate, rational, or compelling interest in the Federal COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

209.   The Federal COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

210.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

211.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their prayer for relief

## COUNT III - VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. § 2000bb-1, *et seq.*

212.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–165 above as if fully set forth herein.

213.    The Religious Freedom Restoration Act (RFRA) provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

214.    RFRA also demands that, should the government substantially burden a person's free exercise of religion, it bears the burden of demonstrating that its burden on religious exercise furthers a compelling government interest and is the least restrictive means of achieving that compelling government interest. 42 U.S.C. § 2000bb-1(b).

215.    RFRA plainly applies to Defendants, as they constitute a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. § 2000bb-2(1).

216.    Congress enacted RFRA "to provide **very broad** protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally

required" under the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 706 (2014) (emphasis added).

217.   As such, RFRA encompasses a very broad definition of "exercise of religion," which includes "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000bb—5(7)(A)).

218.   RFRA mandated that the law "'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000cc—3(g)).

219.   "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).

220.   Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

221.   Plaintiffs have and exercise sincerely held religious beliefs (articulated *supra* Section B) which compel them to abstain from receiving or accepting any of the currently available COVID-19 vaccines.

222.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines.

223.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

224.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

225.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

226.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

227.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

228.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

229.   By forcing Plaintiffs into the unconscionable choice between violating their sincerely held religious convictions or facing dishonorable discharge, courts martial, termination, and other disciplinary measures, Defendants' mandate constitutes a substantial burden on Plaintiffs' exercise of religion.

230.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

231.   There is no legitimate, rational, or compelling interest in the Federal COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

232.   The Federal COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

233.   The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

234.   Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray for relief as follows:

A.    That the Court issue a temporary restraining order restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Federal COVID-19 Vaccine Mandate such that:

      i.    Defendants will immediately comply with the Emergency Use Authorization Statute so that each individual has the "option to accept or refuse" administration of the COVID-19 vaccines as there is currently no FDA approved COVID-19 vaccine available to the population;

     ii.    Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

   iii.    Defendants' will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate; and

   iv.    Defendants will immediately cease any actions arising from or connected to the military servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions

on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

v.    Defendants will immediately cease any actions arising from or connected to the federal civilian employee and contractor Plaintiffs' religious exemption and accommodation requests, including demotion, termination, or other disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

B.    That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Federal COVID-19 Vaccine Mandate such that:

i.    Defendants will immediately comply with the Emergency Use Authorization Statute so that each individual has the "option to accept or refuse" administration of the COVID-19 vaccines as there is currently no FDA approved COVID-19 vaccine available to the population;

ii.    Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

iii.   Defendants' will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate; and

iv.   Defendants will immediately cease any actions arising from or connected to the military servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

v.   Defendants will immediately cease any actions arising from or connected to the federal civilian employee and contractor Plaintiffs' religious exemption and accommodation requests, including demotion, termination, or other disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

C.   That this Court render a declaratory judgment declaring that the Federal COVID-19 Vaccine Mandate, both on its face and as applied by Defendants, is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from military servicemembers and civilian federal employees and contractors, and further declaring—

      i.     the Federal COVID-19 Vaccine Mandate violates the federal Emergency Use Authorization provisions of the Federal Food, Drug, and Cosmetic Act by imposing a mandatory COVID-19 shot upon Plaintiffs without giving the "option to accept or refuse" the EUA product;

      ii.     the Federal COVID-19 Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

      iii.     the Federal COVID-19 Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the federal Religious Freedom Restoration Act by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

D.     That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

E.     That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order;

F.     That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org*
rmast@lc.org*
*Application for Admission pro hac vice pending

**_Attorneys for Plaintiffs_**

## **VERIFICATION**

I, NAVY SEAL 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ NAVY SEAL 1                          
NAVY SEAL 1
(Original Signature retained by Counsel)

## **VERIFICATION**

I, NAVY SEAL 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:    October 15, 2021

/s/ NAVY SEAL 2
NAVY SEAL 2
(Original Signature retained by Counsel)

## **VERIFICATION**

I, NAVY EOD OFFICER, am over the age of eighteen years and a Plaintiff in

this action. The statements and allegations that pertain to me or which I make in this

VERIFIED COMPLAINT are true and correct, and based upon my personal

knowledge (unless otherwise indicated). If called upon to testify to their truthfulness,

I would and could do so competently. I declare under penalty of perjury, under the

laws of the United States, that the foregoing statements are true and correct to the best

of my knowledge.

Dated:        October 15, 2021

/s/ NAVY EOD OFFICER
NAVY EOD OFFICER
(Original Signature retained by Counsel)

# **VERIFICATION**

I, NAVY CHIEF PETTY OFFICER, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ NAVY CHIEF PETTY OFFICER
NAVY CHIEF PETTY OFFICER
(Original Signature retained by Counsel)

## **VERIFICATION**

I, NAVY CHAPLAIN, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:      October 15, 2021

/s/ NAVY CHAPLAIN
NAVY CHAPLAIN
(Original Signature retained by Counsel)

## **VERIFICATION**

I, LIEUTENANT COLONEL 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ LIEUTENANT COLONEL 1
LIEUTENANT COLONEL 1
(Original Signature retained by Counsel)

## **VERIFICATION**

I, LIEUTENANT COLONEL 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ LIEUTENANT COLONEL 2
LIEUTENANT COLONEL 2
(Original Signature retained by Counsel)

## **VERIFICATION**

I, USMC MAJOR, am over the age of eighteen years and a Plaintiff in this
action. The statements and allegations that pertain to me or which I make in this
VERIFIED COMPLAINT are true and correct, and based upon my personal
knowledge (unless otherwise indicated). If called upon to testify to their truthfulness,
I would and could do so competently. I declare under penalty of perjury, under the
laws of the United States, that the foregoing statements are true and correct to the best
of my knowledge.

Dated:        October 15, 2021

/s/ USMC MAJOR
USMC MAJOR
(Original Signature retained by Counsel)

## **VERIFICATION**

I, CAPTAIN, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ CAPTAIN_____
CAPTAIN
(Original Signature retained by Counsel)

## **VERIFICATION**

I, ARMY RANGER, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ ARMY RANGER
ARMY RANGER
(Original Signature retained by Counsel)

## **VERIFICATION**

I, LANCE CORPORAL 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

<u>/s/ LANCE CORPORAL 1</u>
LANCE CORPORAL 1
(Original Signature retained by Counsel)

## **VERIFICATION**

I, LANCE CORPORAL 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:      October 15, 2021

/s/ LANCE CORPORAL 2
LANCE CORPORAL 2
(Original Signature retained by Counsel)

## **VERIFICATION**

I, USMC LIEUTENANT, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ USMC LIEUTENANT
USMC LIEUTENANT
(Original Signature retained by Counsel)

## **VERIFICATION**

I, Air Force MAJOR, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ Air Force MAJOR
Air Force MAJOR
(Original Signature retained by Counsel)

## **<u>VERIFICATION</u>**

I, NATIONAL GUARDSMAN, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:      October 15, 2021

<u>/s/ NATIONAL GUARDSMAN</u>
NATIONAL GUARDSMAN
(Original Signature retained by Counsel)

112

## **VERIFICATION**

I, COAST GUARD LIEUTENANT, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ COAST GUARD LIEUTENANT
COAST GUARD LIEUTENANT
(Original Signature retained by Counsel)

## **VERIFICATION**

I, COLONEL, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ COLONEL_____
COLONEL
(Original Signature retained by Counsel)

# **VERIFICATION**

I, TECHNICAL SERGEANT, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ TECHNICAL SERGEANT
TECHNICAL SERGEANT
(Original Signature retained by Counsel)

## **VERIFICATION**

I, DEFENSE DEPARTMENT CONTRACTOR, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:     October 15, 2021

/s/ DEFENSE DEPARTMENT CONTRACTO
DEFENSE DEPARTMENT CONTRACTOR
(Original Signature retained by Counsel)

## VERIFICATION

I, FEDERAL CIVILIAN ENGINEER CONTRACTOR, am over the age of

eighteen years and a Plaintiff in this action. The statements and allegations that pertain

to me or which I make in this VERIFIED COMPLAINT are true and correct, and

based upon my personal knowledge (unless otherwise indicated). If called upon to

testify to their truthfulness, I would and could do so competently. I declare under

penalty of perjury, under the laws of the United States, that the foregoing statements

are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ FEDERAL CIVILIAN ENGINEER CONTRACTOR
FEDERAL CIVILIAN ENGINEER CONTRACTOR
(Original Signature retained by Counsel)

## <u>VERIFICATION</u>

I, FEDERAL CIVILIAN CONTRACTOR EMPLOYER, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:      October 15, 2021

<u>/s/ FEDERAL CIVILIAN CONTRACTOR EMPLOYER</u>
FEDERAL CIVILIAN CONTRACTOR EMPLOYER
(Original Signature retained by Counsel)

## **VERIFICATION**

I, FEDERAL NUCLEAR CONTRACTOR EMPLOYEE, am over the age of
eighteen years and a Plaintiff in this action. The statements and allegations that pertain
to me or which I make in this VERIFIED COMPLAINT are true and correct, and
based upon my personal knowledge (unless otherwise indicated). If called upon to
testify to their truthfulness, I would and could do so competently. I declare under
penalty of perjury, under the laws of the United States, that the foregoing statements
are true and correct to the best of my knowledge.

Dated:        October 15, 2021

/s/ FEDERAL NUCLEAR CONTRACTOR EMPLOYEE
FEDERAL NUCLEAR CONTRACTOR EMPLOYEE
(Original Signature retained by Counsel)

# **VERIFICATION**

I, DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my knowledge.

Dated:          October 15, 2021

/s/ DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH
DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH
(Original Signature retained by Counsel)