UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| PILOT, United States Coast Guard, *et al.*, for themselves and all others similarly situated,<br><br>     Plaintiffs,<br>v.<br><br>LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*,<br><br>     Defendants. | No. 8:22-cv-1278-SDM-TGW |

**PLAINTIFFS' RENEWED MOTION FOR
CLASSWIDE PRELIMINARY INJUNCTION**

Plaintiffs, pursuant to Fed. R. Civ. P. 65 and Local Rule 3.01, renew their Motion (Doc. 2, 176) for Classwide Preliminary Injunction, as requested in their Third Amended Verified Class Action Complaint (Doc. 198) and Renewed Motion for Class Certification, filed simultaneously herewith. For the reasons set forth in the incorporated Memorandum of Law, Plaintiffs' Motion should be granted.

**INTRODUCTION AND FACTUAL BACKGROUND**

A.  **Plaintiffs' Final Denial Of Religious Accommodation Requests.**

On August 5, 2022, Plaintiffs filed their Third Amended Verified Class Action Complaint (Doc. 198) showing that the Coast Guard had issued a memorandum to all Coast Guard commands to initiate the separation proceedings for all Coast Guardsmen who had refused to accept a COVID-19 vaccination that violates their sincerely held religious beliefs. (Doc. 198, ¶¶ 25–29.) Plaintiffs LCDR Pilot,

Lieutenant 2, Avionics Electrical Technician 1, Marine Science Technician 3, and Senior Chief Boatswain's Mate have all submitted requests for religious accommodation, received determinations of sincerity for their religious objections to mandatory COVID-19 vaccinations, had their requests denied, timely appealed, and had their appeals denied. (Doc. 198, ¶¶ 25–29.) And, Plaintiff Pilot's religious accommodation "imminently will be denied," *Col. Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2022 WL 3643512, at *8 (M.D. Fla. Aug. 18, 2022),. And, all these Plaintiffs have received the Coast Guard's order to either accept vaccination or face termination and separation. (*Id.*).

> **B.     The Inspector General's Memorandum Outlining Defendants' Unlawful Application of COVID-19 Vaccination Requirement.**

On June 2, 2022, the Acting Inspector General for the Department of Defense, Sean W. O'Donnell, submitted a written memorandum to Defendant Secretary Austin outlining the unlawfulness of the DOD's religious accommodation process. (A true and correct copy of the Inspector General's Memorandum is attached hereto as Exhibit A.[1]) The Inspector General stated that the purpose behind his Memorandum

---

[1] The Court may take judicial notice of the Inspector General's Memorandum as a government document. *See, e.g.*, *Austin v. Metro Dev. Grp., LLC*, No. 8:20-cv-1472-T-60TGW, 2020 WL 5543805, at *2 n.2 (M.D. Fla. Sept. 16, 2020) ("federal courts regularly take judicial notice of government documents"); *Smith v. City of Atlantic Beach*, 2020 WL 708145, at *1 (M.D. Fla. Feb. 12, 2020) (same); *Dickens v. Pepperidge Farm Inc.*, No. 8:19-cv-2529-T-60AEP, 2020 WL 4227425, at *1 (M.D. Fla. July 23, 2020) (same); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (court may take judicial notice of government records). And, the Court may take judicial notice of government records "at any stage of the proceeding," Fed. R. Evid. 201(b)(2), including at the preliminary injunction stage. *See Smith v. Dunn*, 568 F. Supp. 3d 1244, 1249 n.1 (M.D. Ala. 2021).

2

was "[t]o inform you of potential noncompliance with standards for reviewing and documenting the denial of religious accommodation requests of Service members identified through complaints submitted to [the Inspector General]." (Ex. A at 1.) Importantly, the Inspector General noted that he "found a trend of generalized assessments rather than the individualized assessment that is required by Federal law and DoD and Military Service policies." (*Id.*) He continued, "The denial memorandums we reviewed generally did not reflect an individualized analysis, demonstrating that the Senior Military Official considered the full range of facts and circumstances relevant to the particular religious accommodation request." (*Id.*)

Not only was the trend noted by the Inspector General concerning, but it demonstrated that Defendants' review of the Proposed Class's requests could not possibly have complied with the requirements of RFRA:

> Additionally, the volume and rate at which decisions were made to deny requests is concerning. The appeal authorities of the Services we reviewed indicated that an average of 50 denials per day were processed over a 90-day period. *Assuming a 10-hour work day with no breaks or attention to other matters, the average review period was about 12 minutes for each package.* Such a review period seems insufficient to process each request in an individualized manner and still perform the duties required of their position.

(Ex. A at 2 (emphasis added).)

# ARGUMENT

I.  **THE PROPOSED CLASS HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR RFRA CLAIMS AGAINST THE COAST GUARD.**

   A.  **The Coast Guard's Systemic Refusal to Accommodate the Proposed Class's Sincerely Held Religious Beliefs Constitutes a Substantial Burden.**

To determine whether the Coast Guard's vaccine mandate on the Proposed Class imposes a substantial burden on their sincere religious beliefs, "the question that RFRA presents [is] whether the [vaccine] mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with their religious beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014). As the Court has already held, "[g]overnmental action coercing a direct violation of a religious belief imposes a substantial burden." (Doc. 111 at 32.) Indeed, "[a] direct order to accept the injection of a substance against which a [Coast Guardsman] harbors a sincere religious objection substantially burdens Free Exercise." *Col. Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2022 WL 3643512, at *14 (M.D. Fla. Aug. 18, 2022).

Plaintiffs and the Proposed Class are "[Coast Guardsmen] of different faiths, different education, and different acumen [who] might understand or explain this objection differently and with more or less clarity," but they uniformly "object that the COVID-19 vaccine was developed from cell lines derived from electively aborted fetuses and that introducing an mRNA-active substance into their body either desecrates their body, a temple of the Holy Spirt, or is *haram*, forbidden." *Col. Fin.*

4

*Mgmt. Officer*, 2022 WL 3643513, at *14. Here, the sworn testimony before the Court demonstrates that each of the Plaintiffs has sincere religious objections to the COVID-19 vaccine, and that such beliefs were determined sincere by the reviewing Coast Guard chaplains. (*See, e.g.*, Doc. 198, ¶¶ 26–29.) Yet, "[n]otwithstanding a chaplain's affirmation, the [Coast Guard] rejects as insubstantial any religious objection grounded in the vaccine's connection to aborted fetal tissue," *Col. Fin. Mgmt. Officer*, 2022 WL 3643513, at *14, and has denied each of Plaintiffs' requested accommodations for sincere religious objections. (Doc. 198, ¶¶ 25–29.) The Coast Guard's submissions to this Court likewise confirm that it systemically rejects requests for accommodation based on religious beliefs. Indeed, as the Coast Guard already admits on the record "*most* Plaintiffs' requests for religious exemptions *and appeals* have been denied." (Doc. 202 at 17 (emphasis added).; *see also* Doc. 198, ¶ 28 (verifying that the Coast Guard has informed "all commands" that they "must initiate separation for all unvaccinated Coast Guard servicemembers by August 24, 2022").)

Simply put,

> The [Coast Guard's] blanket rejection of RFRA's burden confuses the sincerity inquiry with the substantial burden inquiry, which further reveals the systemic failure under which the [Coast Guard's] resolution of religious accommodations labors. Of course, the injection into the body of a substance against which the recipient harbors a sincere religious objection is morally repugnant (to the class) and perforce burdens Free Exercise. And the burden is substantial not because the vaccine and the aborted tissue satisfy some arbitrary degree of connectedness but because the order to accept injection of the vaccine forces the religiously objecting [Coast Guardsman] to choose between betraying a sincere religious conviction and suffering court martial or separation from the military and, likely, visiting adverse consequences on the [Coast Guardsman's]

5

family (such as the abrupt eviction from military housing and disenrollment from military schools).

*Col. Fin. Mgmt. Officer*, 2022 WL 3643513, at *15.

### B. The Coast Guard's Substantial Burden on the Proposed Class's Sincerely Held Religious Beliefs Mandates Strict Scrutiny, Which Defendants Have Not and Cannot Survive.

#### 1. The Coast Guard bears the burden to demonstrate that its substantial burden on Proposed Class members' religious beliefs satisfies strict scrutiny.

"As the Government bears the burden of proof on the ultimate question of [the mandate's] constitutionality, [the Proposed Class] must be deemed likely to prevail unless the Government has shown that [Plaintiffs'] proposed less restrictive alternatives are less effective than [the mandate to accept COVID-19 vaccination]." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). Indeed, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). *See also Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *15 ("that is, the government must bear the burden of going forward with the evidence and satisfying the burden of persuasion, that application of the burden 'to the person' both '(1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest.'" (cleaned up)).

As the Court has held numerous times, the Coast Guard is required to demonstrate a compelling government interest and the least restrictive means as it relates directly to each member of the Proposed Class. Indeed, "RFRA's focus on 'the

6

burden to the person' demands more than dismissive, encompassing, and inflexible generalizations about the government's interest and about the absence of a less restrictive alternative." (Doc. 111 at 34.) And the Coast Guard "must discharge both of RFRA's burdens through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." (Doc. 111 at 34 (cleaned up).) Moreover, "[t]hat the military must demonstrate 'to the person' analysis is no mere formality." (Doc. 173 at 13.) "RFRA requires that a district court 'scrutinize the asserted harm of granting specific exemptions to the particular religious claimants'—in other words, to look to the marginal interest in enforcing the mandate." (Doc. 173 at 13 (quoting *Hobby Lobby*, 573 U.S. at 726).) "RFRA's focus on 'the application of the burden to the person' demands more than dismissive, encompassing, and inflexible generalizations about the government's interest and about the absence of a less restrictive alternative." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *15. Defendants utterly fail to discharge either of those burdens.

In fact, ignoring what the Court has ordered multiple times and what RFRA plainly demands of them, the Coast Guard command continues to "persistently and resolutely cling to the belief that their accustomed and unfettered command discretion need not yield—on the narrow and specific question of the free exercise of religion—to the statutory command of RFRA." (Doc. 122 at 9.) Defendants continue on their charted course "as if RFRA does not exist or has no application to the military or is a matter subject to the command discretion of the military." (Doc. 122 at 10.) "The military designs to avoid the 'to the person' test, but the statute is unflinching" (Doc.

7

122 at 14), and the Coast Guard fails to yield to its commands or discharge the burden it places upon them. Indeed, whether the Coast Guard can satisfy the "to the person" test for a compelling government interest and the least restrictive means is "the question that RFRA burdens the defendants to answer. They have not." (Doc. 122 at 17.) And they have not because they cannot.

> 2. **The Coast Guard fails to discharge its burden under RFRA to demonstrate that forcing the Proposed Class to comply with mandatory COVID-19 vaccination is supported by a compelling interest.**

As was true with the Marine Corps, "[t]he record reveals a substantial likelihood that the [Coast Guard] fails systemically to conduct the analysis required by RFRA, that is, fails to discharge the burden of demonstrating—'to the person'—a compelling interest to vaccinate each applicant." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *15. "[T]he government must proffer 'specific and reliable evidence' (not formulaic commands, policies, and conclusions) demonstrating that the marginal benefit flowing from a specific denial . . . furthers a compelling governmental interest." (Doc. 111 at 34 (quoting *Gonzales*, 546 U.S. at 430–31).) Put simply, as the Court has held, "a district court must not defer to an official's 'mere say-so that the official could not accommodate' a request." (Doc. 111 at 35 (quoting *Holt v. Hobbs*, 574 U.S. 352, 369 (2015)).) "In satisfying this burden of applying RFRA to the person, 'broadly articulated governmental interests and broadly articulated demands of military life' will not suffice." (Doc. 173 at 12; Doc. 111 at 38.) The Coast Guard fails to

8

demonstrate that imposing the vaccine mandate on the Proposed Class is supported by a compelling interest.

Here, as the Coast Guard has made clear, it views all religious objectors the same, "not suited for service in the Coast Guard or any other military service." (Doc. 198, ¶ 25 (quoting Vice Admiral Michael F. McAllister).) And the Inspector General makes this offensive and overly generalized statement even worse by noting that the military does not even attempt to consider relevant facts "to the person" of objecting servicemembers. "The denial memorandums we reviewed generally did not reflect an individualized analysis, demonstrating that the Senior Military Official considered the full range of facts and circumstances relevant to the particular religious accommodation request." (Ex. A at 1.)

> Additionally, the volume and rate at which decisions were made to deny requests is concerning. The appeal authorities of the Services we reviewed indicated that an average of 50 denials per day were processed over a 90-day period. *Assuming a 10-hour work day with no breaks or attention to other matters, the average review period was about 12 minutes for each package.* Such a review period seems insufficient to process each request in an individualized manner and still perform the duties required of their position.

(Ex. A at 2 (emphasis added).) If the Inspector General's Memorandum shows that individualized, "to the person" review of the Plaintiffs' and Proposed Class members' religious accommodation request was not possible, then not only has the Coast Guard not satisfied its burden under RFRA, **it cannot satisfy that burden**.

Put simply, "the government has not shown that the stated interest cannot be reasonably preserved without subjecting [the Proposed Class] to vaccination contrary

9

to a sincerely held religious belief protected by RFRA or, given a refusal to vaccinate, separating [them] from service." (Doc. 111 at 40.) Indeed, the Coast Guard's "justifications for denying a religious accommodation to [the Proposed Class] are elementally inadequate under RFRA." (Doc. 111 at 39.) "RFRA demands more" (Doc. 111 at 38), and the Coast Guard offers less. "Although each [Coast Guard] denial affirms that which no party disputes—that COVID-19 vaccination might promote to some extent the health and readiness of the force—no denial demonstrates that accommodating a particular applicant will meaningfully impede the health and readiness of the 95% vaccinated force or meaningfully impede the military's operations and duties." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *15.

### 3. The Coast Guard fails to discharge its burden under RFRA to demonstrate that forcing the Proposed Class to comply with mandatory COVID-19 vaccination is the least restrictive means.

Under strict scrutiny, "[n]arrow tailoring requires the government to demonstrate that a policy is the 'least restrictive means' of achieving its objective." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). To meet this burden, the government must show it "seriously undertook to address the problem with less intrusive tools readily available to it," meaning that it "considered different methods that other jurisdictions have found effective." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014); *see also Agudath Israel*, 983 F.3d at 633 (same). And the Coast Guard must "show either that substantially less-restrictive alternatives were tried and failed, or that

the alternatives were closely examined and ruled out for good reason," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 573 U.S. at 495).

> As was true with the Marine Corps, the Coast Guard
>
> invariably rejects an accommodation because precautions other than vaccination lack comparable efficacy and are often incompatible with the demands of military life. But RFRA demands an assessment of the marginal interest in enforcing the challenged government action in that particular context. The [Coast Guard's] invoking the general observation that precautions other than vaccination might interfere with the demands of military life is insufficient to demonstrate to the person, that is, in the particular context of an applicant's service, that no precaution other than vaccination is suitable.

*Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *16 (cleaned up).

As the verified allegations before the Court make plain, the Coast Guard's position has been—and remains—that "'[i]f you are unvaccinated, you are not suited for service in the Coast Guard or any other military service.'" (Doc. 198, ¶ 25 (quoting Coast Guard Vice Admiral Michael F. McAllister).) And, just as the Marine Corps did with its systemic denial of religious accommodations, the Coast Guard submits to the Court that its refusal to accommodate sincerely held religious beliefs is justified by its interest in "maintaining a healthy, effective military workforce required for mission accomplishment at the individual, unit, and organizational level, including in maintaining military readiness, unit cohesion, good order and discipline, and health and safety." (Doc. 202-1, ¶ 28.) The Coast Guard further justifies its blanket denial of

religious accommodations on the same rationale that "all personnel must be available for unrestricted duty assignment worldwide." (Doc. 202-1, ¶ 26.)

But this generalized assessment must fail for the Coast Guard as it did for the Marine Corps before it. The Coast Guard

> cannot evade RFRA by defining the conditions of service to exclude the possibility of an accommodation. This definitional sleight of hand evades the inquiry that RFRA demands: whether the [Coast Guard's] generalized interest in worldwide deployability is materially impaired by tolerating a few religious objectors and accommodating their continued service to the [Coast Guard] despite the generalized policy of worldwide deployability.

*Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *17. Simply put, the Coast Guard

> is most likely unable to establish, and certainly has not established, that permitting a minimal number of sincere RFRA objectors . . . to serve without adverse consequence to their rank and the terms and conditions of their service will adversely affect the governmental interest in the maintenance and readiness of the nation's military forces.

*Id.*

And, as the Inspector General's Memorandum notes, the Coast Guard is not even trying to determine whether other accommodations are available. "The denial memorandums we reviewed generally did not reflect an individualized analysis, demonstrating that the Senior Military Official considered the full range of facts and circumstances relevant to the particular religious accommodation request." (Ex. A at 1.) Not only was the trend noted by the Inspector General concerning, but it demonstrated that Defendants' review of the Proposed Class's requests could not possibly have complied with the requirements of RFRA:

12

> Additionally, the volume and rate at which decisions were made to deny requests is concerning. The appeal authorities of the Services we reviewed indicated that an average of 50 denials per day were processed over a 90-day period. *Assuming a 10-hour work day with no breaks or attention to other matters, the average review period was about 12 minutes for each package.* Such a review period seems insufficient to process each request in an individualized manner and still perform the duties required of their position.

(Ex. A at 2 (emphasis added).)

As was true with the Marine Corps, here, "[t]he record reveals a substantial likelihood that the [Coast Guard] fails systemically to conduct the analysis required by RFRA, that is, fails to discharge the burden of demonstrating—'to the person'"—that vaccinating each applicant is the least restrictive means. *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *16.

## II. THE PROPOSED CLASS FACES IMMEDIATE, IMMINENT, AND IRREPARABLE INJURY ABSENT CLASSWIDE INJUNCTIVE RELIEF.

"[T]here can be no question that the challenged restrictions, if enforced, will cause irreparable harm. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As this Court has held, "the substantial pressure on a religiously objecting service member to obey the COVID-19 vaccination order and violate a sincerely held religious belief constitutes an irreparable injury redressable by a preliminary injunction." (Doc. 111 at 44–45.) *See also Air Force Officer v. Austin*, No. 5:22-cv-9-TES, 2022 WL 468799, at *12 (M.D. Ga. Feb. 15, 2022) (same); *Navy SEALS 1–26 v. Biden*, 578 F. Supp. 3d 822, 839 (N.D. Tex. 2022) ("The crisis of conscience imposed by the

13

mandate is itself an irreparable harm."). Indeed, "[r]equiring a service member either to follow a direct order contrary to a sincerely held religious belief or to face immediate processing for separation or other punishment undoubtedly causes irreparable harm." (Doc. 111 at 45.)

"Because, as the [Coast Guard] willingly concedes, a [Coast Guardsman's] failure to comply with an order to receive COVID-19 vaccination subjects the [Coast Guardsman] to a 'substantial threat' of serious discipline including discharge, a RFRA objector's claim ripens upon the receipt of the order to receive vaccination." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *17. And, here, there is no dispute that Plaintiffs have been finally denied and received the order to vaccinate. (Doc. 198, ¶¶ 25-29.) The same is true for many Proposed Class members. Thus,

> Because the [Coast Guard] has ordered many [Coast Guardsman] and will order more to receive vaccination—an order that puts each plaintiff to the choice of either betraying a sincerely held religious belief or facing a substantial threat of serious discipline—the class suffers a substantial burden . . . and consequently suffers irreparable harm.

*Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *18 (cleaned up). The preliminary injunction should issue for the entire Proposed Class.

### III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST FAVOR CLASSWIDE INJUNCTIVE RELIEF.

"Because the religiously objecting [Coast Guardsmen] request preliminary relief against officials of the federal government, the analysis on the balance of equities and the analysis on the public interest merge." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *18. As the Court has already held, "the public has no interest in tolerating an

unnecessary infringement on Free Exercise." *Id.* (*See also* Doc. 111 at 45.) Indeed, "no injury to the public results from recognizing a person's constitutional or statutory right or from 'encouraging' a person to vindicate that right in federal court." (Doc. 111 at 46.) In vivid contrast, the only harm that befalls Defendants in the instant matter is a self-inflicted wound. As the Court held, "to the extent a 'substantial disruption' results from the defendants' systemic failure to assess a religious exemption request 'to the person,' the 'harm' suffered by defendants results from the defendants' own failure to comply with RFRA." (Doc. 111 at 46.) Plaintiffs and the Proposed Class "request[] only narrow, specific, and temporary relief and only that [should be] granted." (Doc. 173 at 19.) "Both the balance of the equities and public interest favor [Plaintiffs and the Proposed Class]." (Doc. 173 at 19.)

Plaintiffs and the Proposed Class can say it no more eloquently than the Court already has:

> By enacting RFRA, Congress guaranteed each [Coast Guardsman] "appropriate relief" from an infringement on the [Coast Guardsman's] Free Exercise. To say the least, an attempted evasion of judicial review strongly disserves the public interest. For the past two years, the [Coast Guardsmen] serving in the [Coast Guard] have ably discharged their duties. Almost all served at the onset of the pandemic and served successfully during peak jeopardy in the pandemic and before any vaccination against COVID-19 existed, almost all served during the height of the Delta variant surge, and almost all served during the Omicron variant. Nothing in the record establishes that preliminary injunctive relief for the religiously objecting [Coast Guardsmen] harms the public interest. Preserving and extending the status quo for a brief interval protects Free Exercise and ensures judicial review of allegedly wrongful government action. The record fails to demonstrate any meaningful increment of harm to national defense likely to result because these [Coast Guardsmen] continue to serve—as they have

> served—unvaccinated but in accord with other, proven, rigorous, and successful safety protocols.

*Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *18. The relief afforded to the religiously objecting Marines in *Colonel Financial Management Officer* is equally appropriate here. The Proposed Class should be certified and the preliminary injunction granted.

## CONCLUSION

As the Court concluded before, "RFRA directs the district court to award a successful plaintiff an 'appropriate remedy' to protect Free Exercise against undue restriction by any component of the federal government, which includes the legislative, the judicial, and the executive branch, including the armed forces and, in this instance, including the [Coast Guard]." *Col. Fin. Mgmt. Officer*, 2022 WL 3643512, at *18. "The singular characteristics of the plaintiff class in this action, the singular nature of the defendants in this action, the singular statute at issue in this action, the singular breadth of the statutory remedy prescribed, and the singular public interest in preserving both a fundamental constitutional right and a robust and ready military" support a finding that the Plaintiffs and Proposed Class members before the Court warrant classwide relief. *Id.*

As such, Plaintiffs and the Proposed Class respectfully request that the Court certify the Proposed Class and issue a preliminary injunction such that Defendants are preliminarily enjoined (1) from enforcing against any member of the class any order, requirement, or rule to accept COVID-19 vaccination, (2) from separating or discharging from the Coast Guard any member of the class who declines COVID-19

16

vaccination, and (3) from retaliating against any member of the class for the member's asserting statutory rights under RFRA.

        Respectfully submitted,

          s/ Daniel J. Schmid
          Mathew D. Staver
          Horatio G. Mihet
          Roger K. Gannam
          Daniel J. Schmid*
          Richard L. Mast*
          Liberty Counsel
          P.O. Box 540774
          Orlando, FL 32854
          (407) 875-1776
          court@lc.org
          hmihet@lc.org
          rgannam@lc.org
          dschmid@lc.org
          rmast@lc.org
          *Admitted specially
          ***Attorneys for Plaintiffs***