## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**PILOT,** United States Coast Guard, *et al.*,

                    Plaintiffs,

    v.

**LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*,

                    Defendants.

Case No. 8:22-cv-1278 (SDM/TGW)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A CLASSWIDE PRELIMINARY INJUNCTION

In warfare, disease has historically accounted for more service member deaths than battlefield injuries, and a healthy fighting force has long been a key part of America's military readiness. Before the COVID-19 pandemic, the Department of Defense's ("DoD") decades-old immunization program required that all service members obtain at least nine immunizations, and up to an additional eight depending on circumstances. Amid a pandemic that has killed over one million Americans, and seeking to protect the health and readiness of the Armed Forces by reducing the risk of hospitalizations and deaths among service members, DoD added vaccination against COVID-19 to this long list of immunizations required for service members.

Plaintiffs are six current or former members of the United States Coast Guard who allege that the military's COVID-19 vaccination requirements violate, among other things, the Religious Freedom Restoration Act ("RFRA"). On that basis, Plaintiffs seek to preliminarily enjoin Defendants from enforcing any COVID-19 vaccination requirement against Plaintiffs or any putative member of a yet-uncertified

class. Pls.' Renewed Mot. for Classwide Prelim. Inj. ("Mot.") at 16, ECF No. 205. But Plaintiffs fail to satisfy any of the prerequisites for granting such extraordinary relief.

*First,* Plaintiffs' RFRA claims are unlikely to succeed on the merits because, as a threshold matter, they are not justiciable. No Plaintiff has been involuntarily separated for failing to become vaccinated against COVID-19 (and may never be), and extensive military procedures remain available to Plaintiffs to challenge the vaccination requirement and any disciplinary action imposed for noncompliance.

*Second,* the Coast Guard's COVID-19 vaccination requirement satisfies RFRA because the Coast Guard has extraordinarily compelling interests in the health and readiness of its forces—Plaintiffs included—and no less restrictive measure serves those interests equally well as vaccination. Plaintiffs cannot demonstrate that the Coast Guard has violated their RFRA rights simply by reciting this Court's factual findings regarding the religious-accommodation processes of other military services.

*Third,* Plaintiffs marshal no evidence showing an actual threat of irreparable harm absent preliminary relief. Their arguments on this score rest on alleged injuries neither imminent nor irreparable and wholly speculative and unsubstantiated.

Accordingly, Plaintiffs have failed to justify the issuance of a preliminary injunction. The Court should therefore deny their motion.

## BACKGROUND

Defendants' prior briefing in this matter provided pertinent background regarding (i) the COVID-19 pandemic; (ii) DoD's and the Coast Guard's COVID-19

vaccination requirements; (iii) other litigation implicating these vaccination requirements; and (iv) the procedural history preceding the Court's severance of this action. Defendants respectfully refer the Court to that background.[1]

*Recent proceedings.* On August 5, 2022, Plaintiffs filed a third amended complaint on behalf of themselves and a putative class of service members who have been denied a religious exemption from the Coast Guard's COVID-19 vaccination requirement, alleging, among other things, that the requirement violates RFRA.[2] Defendants moved to dismiss Plaintiffs' complaint on September 20, 2022. *See generally* MTD.

On October 18, 2022, Plaintiffs filed a motion for a class-wide preliminary injunction to prevent Defendants from enforcing a COVID-19 vaccination requirement against Plaintiffs and the putative class or from retaliating against any Plaintiff or putative class member for "asserting statutory rights under RFRA." *See* Mot. at 16–17. That same day, Plaintiffs also filed a motion to certify a class under Federal Rule of Civil Procedure 23.[3]

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic

---

[1] *See* Defs.' Opp. to Pls.' Mot. for a TRO & Prelim. Inj. at 2–6, ECF No. 23; Defs.' Mot. to Dismiss Third Amend. Compl. ("MTD") at 2–8, ECF No. 202.

[2] *See* Third Am. Verified Class Action Compl. for Prelim. & Perm. Inj. Relief, Decl. Relief, and Damages ("Compl.") ¶¶ 24–29, 139–48, ECF No. 198. Plaintiffs' complaint also asserts claims under 21 U.S.C. § 360bbb-3 and 10 U.S.C. §§ 1107, 1107a and the First Amendment's Free Exercise Clause. *Id.* ¶¶ 149–193. But Plaintiffs do not rely on those claims in seeking preliminary relief, and thus Defendants address only Plaintiffs' RFRA claims in opposing the preliminary-injunction motion.

[3] *See* Pls.' Renewed Mot. to Certify Class Under Rule 23, ECF No. 204.

3

remedy," a plaintiff must make a "*clear showing*" that (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in his favor; and (4) preliminary relief would serve the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Failure to demonstrate any one of these elements requires denial of preliminary relief. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

Additionally, courts extend great deference to the military in reviewing the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which are "essentially professional military judgments." *Winter*, 555 U.S. at 24 (citation omitted). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *accord Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)*.* This deference extends to constitutional claims and military decisions about the health and welfare of the troops. *See, e.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987); *Ethredge v. Hail*, 56 F.3d 1324, 1328 (11th Cir. 1995); *Lindenau v. Alexander*, 663 F.2d 68, 70–74 (10th Cir. 1981).

## ARGUMENT

I.   **Plaintiffs are unlikely to succeed on the merits of their RFRA claims.**

A.   **Plaintiffs' RFRA claims are not justiciable.**

For Plaintiffs to succeed on the merits of their claims, the Court must resolve in their favor several threshold issues, including mootness, ripeness, exhaustion, and the

justiciability of claims implicating military personnel decisions. Plaintiffs are unlikely to succeed on any one of these issues, and thus are unlikely to succeed on the merits. *See, e.g.*, *Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019).

### i.  Lieutenant 2's claims are moot because she no longer serves in the Coast Guard.

Lieutenant 2 resigned from the Coast Guard in June 2022. *See* ECF No. 202-8, Decl. of Capt. Jason B. Gunning ¶¶ 6–7. Because Lieutenant 2 is no longer subject to the military's COVID-19 vaccination requirements, she "lack[s] a legally cognizable interest" in the disposition of her claims for prospective relief, *see FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021) (citation omitted); *accord Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), and resolving her RFRA claim would have no practical impact. *See Prison Legal News v. FBI*, 944 F.3d 868, 880 (10th Cir. 2019); *accord Rau v. Moats*, 772 F. App'x 814, 817 (11th Cir. 2019). Her claims are thus moot.

### ii.  Plaintiffs' RFRA claims are not ripe.

Plaintiffs' RFRA claims are neither constitutionally nor prudentially ripe. The ripeness doctrine ensures that federal courts do not decide disputes that are premature or speculative, *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006), and reflects both "Article III limitations on judicial power," as well as "prudential reasons for refusing to exercise jurisdiction," *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted). This doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from

judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1174 (11th Cir. 2006) (citation omitted).

*Constitutional ripeness.* "[T]he doctrine of constitutional ripeness overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (citation omitted); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021). Thus, if a purported injury is "contingent on future events that may not occur as anticipated, or indeed may not occur at all," the claim is not constitutionally ripe for adjudication. *Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1202 n.2 (11th Cir. 2021) (alteration adopted) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

For this reason, several courts have declined to review claims brought by service members who—like Plaintiffs—challenged the military's COVID-19 vaccination requirements to avoid the *possibility* of separation for refusing to comply, including on RFRA grounds. *See Miller v. Austin*, --- F. Supp. 3d ---, 2022 WL 3584666, at *4 (D. Wyo. Aug. 22, 2022);  *Knick v. Austin*, No. 22-1267, 2022 WL 2157066, at *3 (D.D.C. June 15, 2022); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665, *4–7 (W.D. Ky. Apr. 12, 2022); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374, at *2–3 (D. Colo. Jan. 11, 2022); *Church v. Biden*, 573 F. Supp. 3d 118, 136–37 (D.D.C. 2021); *see also Standage v. Braithwaite*, 526 F. Supp. 3d 56, 94 (D. Md. 2021); *Diraffael v. Cal. Mil.*

*Dep't*, No. 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) ("[C]ommencement of discharge proceedings" is not sufficient injury when "proceedings are still underway" and "no final determination has been reached."). Courts have also rejected contentions that a claim is ripe because separation is likely. *See Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148, at *6 (D.D.C. Mar. 21, 2022). (explaining that the court cannot "make predictions as to what other entities might conclude," and nothing could "change[] the fact that" the plaintiff "ha[d] yet to be discharged"); *accord Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021). In each case, the alleged injuries remained "theoretical, rather than certain and impending." *See Roberts*, 2022 WL 834148, at *4.[4]

So too here. Plaintiffs seek to avoid the *possibility* of involuntary separation or other disciplinary actions for refusing to become vaccinated against COVID-19 based on their religious convictions. Compl., Prayer for Relief at 72–73. But no matter how confident they are that the Coast Guard will someday separate them, claims seeking relief from military-discharge decisions "are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *Roberts*,

---

[4] Defendants acknowledge that this Court has concluded otherwise, holding that a plaintiff's RFRA claim ripens at "the first moment an objecting service member must act contrary to a religious belief." *Navy SEAL 1 v. Austin*, 574 F. Supp. 3d 1124, 1143 (M.D. Fla. 2021). Defendants respectfully disagree, however. In this context, the concrete, redressable injury that ripens a dispute is the involuntary separation of a service member for failing to receive the COVID-19 vaccine, *see supra* p.6– 7 (collecting cases), an injury that no Plaintiff alleges. And in any event, no Plaintiff has been forced to act contrary to his or her religious beliefs, as "no government actor is preventing Plaintiff[s] from exercising [their] alleged religious conviction against COVID-19 vaccination." *See Navy SEAL 1 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1294486, at *16 (D.D.C. Apr. 29, 2022); *see also Thomas Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1203876, at *8 (D. Ariz. Apr. 22, 2022).

2022 WL 834148, at *5. As previously outlined, *see* MTD at 17 & n.18, involuntary separation proceedings have not been completed for any Plaintiff—and may never be. Each Plaintiff currently serving in the Coast Guard thus still has the opportunity to be heard before a discharge decision could be made. *Id.* at 3–4. And even if the separation authority were to decide to discharge a Plaintiff, he or she could still seek adequate administrative relief from that decision before coming to federal court. *Id.*

Plaintiffs therefore seek to invoke this Court's jurisdiction to remedy injuries that are merely theoretical and "based on nothing more than speculation" about events "that might never come to pass." *See Robert*, 2022 WL 103374, at *2–3; *accord Church*, 573 F. Supp. 3d at 137; *Miller*, 2022 WL 3584666, at *4. As a constitutional matter, these claims are not ripe for review.

*Prudential ripeness.* For similar reasons, Plaintiffs' claims are also not ripe as a prudential matter. In evaluating prudential ripeness, a court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (citation omitted); *see also Game Truck Ga., LLC v. Atl. Specialty Ins. Co.*, 849 F. App'x 233, 236 n.1 (11th Cir. 2021) (noting that these are "'prudential ripeness' requirements"); *accord Ass'n of Irritated Residents*, 10 F.4th at 944. Plaintiffs must satisfy both these prongs, *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 435 n.30 (5th Cir. 2021), yet they satisfy neither.

*First*, Plaintiffs' claims are not fit for judicial resolution, because matters still "subject to ongoing administrative review" are not ripe for judicial intervention. *Farrell-Cooper Min. Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1235–38 (10th Cir. 2013). As explained, *see supra* pp. 6–8; MTD at 17, proceeding now would require the Court "to adjudicate internal military affairs before the military chain of command has had full opportunity to consider" them. *Church*, 573 F. Supp. 3d at 137; *accord Roberts*, 2022 WL 834148, at *5–6; *Miller*, 2022 WL 3584666 at *3–5. "'Judicial intervention' at this stage would [therefore] 'inappropriately interfere with further administrative action' on the matter before the Court." *Miller*, 2022 WL 3584666 at *4 (citation omitted).

The fact that, at some point in the future, the Coast Guard "*may* separate or otherwise discipline a Plaintiff for refusing to comply with its COVID-19 vaccination requirement cannot ripen this [RFRA] case." *Id.* at *4. "Whether to separate or discipline a service member is a discretionary decision that is left, in the first instance, to the" Coast Guard. *Id.*; *see also, e.g.*, *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64 (1967). The "initiation of separation proceedings is [thus] a tentative action not fit for judicial review," because "one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). As explained, any Plaintiffs currently in separation proceedings "still have multiple opportunities" to be heard by decision-making bodies that have the authority to retain their service. *Miller*, 2022 WL 3584666, at *5; *see also* MTD at 3–4. Accordingly, at this point, it is entirely "possible that something" raised by a Plaintiff during his or her separation or post-

separation proceedings "will compel [the Coast Guard] to drop the [separation]," obviating the need for any judicial involvement. *See TOTAL Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325, 336 (5th Cir. 2017).

Separately, it is unclear whether Plaintiffs are asking this Court also to enjoin the Coast Guard from taking any non-disciplinary employment actions based on their refusal to become vaccinated. But if so, those claims for relief are also unfit for judicial resolution. First of all, Plaintiffs offer no evidence that they are facing or will soon face any employment actions based on their vaccination status, and thus any such claim would be based on pure speculation. *See Thomas,* 473 U.S. at 580–81. Moreover, the Supreme Court's order in *Austin v. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022), stayed a lower court injunction to the extent that it "preclude[d] the Navy from considering [service members'] vaccination status in making deployment, assignment, and other operational decisions," *id.* at 1301. Thus, in no event may the Court enter relief that would interfere with these types of actions.

"The Constitution vests [such] complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force exclusively in the legislative and executive branches." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (cleaned up) (quoting *Gilligan*, 413 U.S. at 10). The Supreme Court has long made clear that "judges are not given the task of running the Army. The responsibility for setting up channels through which" complaints regarding internal military affairs "can be considered and fairly settled rests upon" Congress, the President, and his subordinates. *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953).

"Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id.* at 94. Therefore, if Plaintiffs are asking the Court to enjoin the Coast Guard from taking any non-disciplinary employment action against them based on their refusal to become vaccinated, this would not only conflict with the partial stay granted by the Supreme Court in *Navy SEALs 1-26,* but also with long-standing and binding principles of inter-branch comity and judicial restraint in the military context. *See Navy SEALs 1-26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring).

*Second*, Plaintiff have not established that delaying resolution of their claims would cause them any hardship, *see supra* pp. 7–9; *infra* pp. 26–29, and all arguments to the contrary rest on layers of speculation. Thus, in sum, under either a constitutional or prudential rubric, Plaintiffs' RFRA claims are not ripe for review.

### iii.   Plaintiffs have not exhausted available intra-service remedies.

Setting aside ripeness, Plaintiffs' claims are not justiciable for another reason: They have not exhausted available intra-service remedies. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Requiring exhaustion in the military context is particularly appropriate, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975);

11

*Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan*, 413 U.S. at 10). Binding Circuit precedent has thus long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971));[5] *accord Winck v. England*, 327 F.3d 1296, 1303 (11th Cir. 2003); *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases). And even when a plaintiff meets this threshold requirement, a court still must weigh several factors to determine the propriety of reviewing a claim challenging internal military matters: (i) the nature and strength of the challenge; (ii) the potential injury to the plaintiffs if review is refused; (iii) the type and degree of anticipated interference with the military function; and (iv) the extent to which the exercise of military expertise or discretion is involved. *Mindes*, 453 F.2d at 201.

*Exhaustion.* Although Plaintiffs have sought religious exemptions from the Coast Guard's COVID-19 vaccination requirement, they have not pursued their claims through all available administrative procedures,[6] *supra* pp. 7–9, during which the Coast Guard can build a factual record and determine in the first instance whether a Plaintiff should be granted relief. For that reason, courts have recently denied relief to service members who similarly failed to exhaust available separation remedies

---

[5] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6] Courts routinely require service members to exhaust claims before the Board for Correction of Military Records before filing suit. *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *Von Hoffburg*, 615 F.2d at 638, 641; *Mindes*, 453 F.2d at 198; *McCurdy v. Zuckert*, 359 F.2d 491, 495 (5th Cir. 1966).

before pursuing RFRA challenges relating to the military's COVID-19 vaccination requirements. *See, e.g., Church*, 573 F. Supp. 3d at 136–38; *Miller*, 2022 WL 3584666, at \*5; *Robert*, 2022 WL 103374, at \*3; *Knick*, 2022 WL 2157066, at \*3; *Mark Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1051852, at \*4 (C.D. Cal. Mar. 3, 2022).[7]

*Mindes factors.* But even if Plaintiffs had properly exhausted all available administrative remedies before bringing this action, their claims would still be unreviewable because each of the *Mindes* factors weighs against judicial review. As discussed below, *infra* pp. 14–26, Plaintiffs' RFRA claims are unlikely to succeed on the merits, and they offer no evidence that they face any harm absent judicial review.

The third and fourth *Mindes* factors, moreover, weigh decidedly against reviewing Plaintiffs' claims. *See West v. Brown*, 558 F.2d 757, 760–61 (5th Cir. 1977) ("[These factors] present a single inquiry, focusing on disruption of military functions"). "[M]ilitary readiness and unit cohesion would be unacceptably harmed

---

[7] Again, Defendants respectfully submit that, because "no government actor is preventing Plaintiff[s] from exercising [their] alleged religious conviction against COVID-19 vaccination," *see Navy SEAL 1*, 2022 WL 1294486, at \*16, no Plaintiff will "suffer[] immediate, irreparable harm to Free Exercise" of religion by having to exhaust available administrative remedies, *see Colonel Fin. Mgmt. Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 3643512, at \*9 (M.D. Fla. Aug. 18, 2022). Nor do Plaintiffs offer evidence to support a finding that exhaustion would be futile. *See id.* at \*9 n.8 (noting that futility is also an exception to exhaustion). Indeed, such a finding would run counter to the presumption that "[m]ilitary officers . . . 'discharge their duties correctly, lawfully, and in good faith,'" *Hoffman v. United States*, 894 F.2d 380, 385 (Fed. Cir. 1990) (citation omitted); *accord Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997), affording service members the constitutional and statutory protections to which they are entitled, *Hodges*, 499 F.2d at 424. Only by "well-nigh irrefragable proof," *Marine Shale Processors, Inc. v. EPA*, 81 F.3d 1371, 1385 (5th Cir. 1996) (citation omitted), "of bad faith or improper behavior" is a court permitted to set aside this presumption of good faith and regularity, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *accord Adair v. England*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002). Yet no such proof exists here. Plaintiffs' allegation regarding one officer's statement is hearsay upon hearsay. *See* Mot. at 9, 11. It is also incorrect: service members who have been granted an exemption from the Coast Guard's vaccination requirement will not be discharged for refusing to become vaccinated unless and until the exemption expires or is revoked.

should the Court" issue the prayed-for declaratory or injunctive relief implicating the military's "Vaccine Mandate." *Church*, 573 F. Supp. 3d at 146–47; *see also, e.g.*, Ex. 1, Decl. of Maj. Scott Stanley ¶ 21. "[F]orcing the [Coast Guard] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short*, 2022 WL 1203876, at *15 (citation omitted). Even the risk of a single Plaintiff going unvaccinated is a serious concern because, *inter alia*, unvaccinated individuals have many times the risk of suffering severe illness from SARS-CoV-2 infection and requiring hospitalization as a result. Ex. 1 ¶¶ 16–18. To review Plaintiffs' claims, the Court would need to "involve itself in 'complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force.'" *Thomas Short*, 2022 WL 1203876, at *15 (citation omitted). And by requiring the Coast Guard to retain, deploy, or assign each Plaintiff without regard for his or her vaccination status, the Court would improperly insert itself into a Plaintiff's chain of command, overriding military commanders' judgments about operational needs, including Plaintiffs' fitness to serve and carry out their duties. "[T]he public's interest in military readiness and the military's interest in Plaintiff[s'] health outweigh" Plaintiffs' alleged interests in the resolution of their claims. *See Navy SEAL 1*, 2022 WL 1294486, at *16.

## B.   Plaintiffs are unlikely to succeed on the merits of their RFRA claims.

Military orders to vaccinate do not violate RFRA if the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Requiring Plaintiffs

14

who currently serve in the Coast Guard to be vaccinated furthers the compelling interests in military readiness and health and safety of service members and is the least restrictive means of advancing those interests.[8] "[A] majority of the Supreme Court has already held . . . that the Government is likely to succeed on the merits on the same claims brought by Navy SEALs," and although this decision may not be formally binding, "it is the most persuasive authority on which a District Court may rely." *Navy SEAL 1*, 2022 WL 1294486, at *4 (citing *Navy SEALs 1–26*, 142 S. Ct. at 1301).[9]

### i.   Vaccinating Plaintiffs against COVID-19 furthers Defendants' compelling interests.

Requiring Plaintiffs to be vaccinated against COVID-19 furthers the compelling military interests in force health and readiness, especially when evaluated under the substantial deference that courts afford military operational decision-making. "[N]o court has ever held that the military does not have a compelling interest in the health

---

[8] This section's references to "Plaintiffs" excludes Lieutenant 2, who no longer serves in the Coast Guard.

[9] Plaintiffs contend that the Coast Guard's COVID-19 vaccination requirement substantially burdens their sincerely held religious beliefs because the Pfizer, Moderna, and Johnson & Johnson vaccines were tested using fetal cell lines that Plaintiffs believe derived from prior elective abortions. Ex. 3 at 28, 334–35; Ex. 4 at 83; Ex. 5 at 196; Ex. 6 at 47–48; Ex. 7 at 37–38. But even if Plaintiffs were correct that these vaccines were tested using such fetal cell lines, they do not contend that a fourth COVID-19 vaccine produced by Novavax substantially burdens their religious beliefs. According to the Chief Scientist at Novavax, "[a]nimal or fetal-derived cell lines/tissue are not used in the manufacturing, testing, or production of the Novavax COVID-19 vaccine." Ex. 8. Novavax's vaccine recently received FDA Emergency Use Authorization, has the CDC's recommendation, and satisfies the Coast Guard's vaccination requirement. FDA, *FDA Authorizes Emergency Use of Novavax COVID-19 Vaccine, Adjuvanted*, https://perma.cc/6FJ9-Q7TN; CDC, *CDC Recommends Novavax's COVID-19 Vaccine for Adults*, https://perma.cc/8E93-TG2T; Sec'y of Air Force. Mem. (Sept. 3, 2021), https://perma.cc/6E2W-3EQM. Because Plaintiffs articulate no other burden on their religious beliefs imposed by all available COVID-19 vaccines, they are even more unlikely to succeed on their RFRA claims. *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 590–91 (6th Cir. 2018); *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016–17 (9th Cir. 2016).

of its troops" or "that vaccination against harmful diseases does not serve a compelling government interest." *Navy SEAL 1*, 2022 WL 1294486, at *9; *accord Creaghan v. Austin*, --- F. Supp. 3d ---, 2022 WL 1500544, at *9 (D.D.C. May 12, 2022). The Supreme Court has instead repeatedly emphasized that the government's interest in "maximum efficiency" of military operations is paramount, *cf. United States v. O'Brien*, 391 U.S. 367, 381 (1968), and that "[f]ew interests can be more compelling than a nation's need to ensure its own security," *Wayte v. United States*, 470 U.S. 598, 611 (1985). And "[w]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Mark Short*, 2022 WL 1051852, at *7 (quoting *Goldman*, 475 U.S. at 507). In fact, Congress recognized these long-standing deference principles in enacting RFRA. S. Rep. No. 103-111, at 12 (1993) ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in [regulating] our armed services," and "have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill."); *Navy SEAL 1*, 2022 WL 1294486, at *8.

After consulting with "medical experts and military leadership," including the "Chairman of the Joint Chiefs of Staff, the Secretaries of the Military Departments, [and] the Service Chiefs," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-

S758; Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. The Commandant of the Coast Guard likewise found that COVID-19 vaccination of each service member is necessary to ensure military readiness and the health and safety of service members. *See* ECF No. 202-1, Decl. of Rear Adm. Eric C. Jones ("Jones Decl.") ¶¶ 4, 28. And "logic alone" dictates that "the military's general compelling interest in ensuring the health of its servicemembers . . . distill[s] to a compelling interest in ensuring that [each individual service member] remains healthy enough to accomplish [his] duties." *Creaghan*, 2022 WL 1500544, at *9; *see also Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830, at *17 (D. Neb. May 18, 2022). The Court must "give great deference" to these leaders' "professional military judgments" as to what is needed to ensure military readiness and the welfare of service members. *Winter*, 555 U.S. at 24–25 (collecting cases). And "when executive officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their judgments 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health.'" *Mark Short*, 2022 WL 1051852, at *5 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring)); *accord Creaghan*, 2022 WL 1500544, at *8.

Here, the Coast Guard conducted the individualized, "to the person" analysis that RFRA requires, considering the particular job duties of each Plaintiff and concluding that permitting each of them to remain unvaccinated would undermine the military's compelling interest in ensuring Plaintiffs can carry out their military duties effectively, *see* Jones Decl. ¶¶ 22–25; *see also, e.g.*, *Roth*, 2022 WL 1568830, at *15.

_Pilot._ Pilot serves as a First Pilot of a medium-range surveillance aircraft, the HC-144. *See* ECF No. 202-3, Decl. of Capt. Hans C. Govertsen ("Govertsen Decl.") ¶¶ 3–4. While on mission, HC-144 aircrews require two pilots per aircraft who sit shoulder-to-shoulder in an enclosed cockpit. *Id.* ¶¶ 4, 6; Ex. 3 at 331. Pilot also leads aircrews of multi-mission aircraft on 24-hour alert duty, executing search-and-rescue, law enforcement, maritime safety, and security missions in the Gulf of Mexico. Govertsen Decl. ¶¶ 1, 4.

_LCDR Pilot._ While his RAR and appeal were pending, Lieutenant Commander ("LCDR") Pilot served as a First Pilot of a long-range search-and-rescue aircraft, the HC-130J. *See* ECF No. 202-4, Decl. of Capt. Nathan E. Coulter ("Coulter Decl.") ¶¶ 3–4. Like the aircrew for the HC-144, an HC-130J aircrew requires two pilots per aircraft who sit side-by-side in an enclosed cockpit. *Id.* ¶¶ 4, 7; *see also* Ex. 4 at 111. And like Pilot, LCDR Pilot also led aircrews of multi-mission aircraft on 24-hour alert duty, executing search-and-rescue, law enforcement, maritime safety, and security missions for Air Station Kodiak. Coulter Decl. ¶ 1, 4. He also exercised maintenance-release authority for the HC-130J at Air Station Kodiak, requiring that he physically inspect the aircraft and equipment and interact in person with his crew members. *Id.* ¶¶ 3, 5.

_AET1._ Avionics Electrical Technician First Class ("AET1") is a senior Watch Captain. *See* ECF No. 202-5, Decl. of Capt. Scott S. Phy ("Phy Decl.") ¶ 4. As such, AET1 must be physically present at Air Station Clearwater for 24-hour shifts to supervise a team that executes scheduling, maintenance, and launch preparations for the station's four HC-130H aircraft. *Id.* ¶¶ 3–6; *see also* Ex. 5 at 189.

18

*MST3.* Marine Science Technician 3 ("MST3") is a marine science technician serving in the Coast Guard Reserve. *See* ECF No. 202-6, Decl. of Capt. Michael P. Kahle ("Kahle Decl.") ¶ 3. MST3's duties include responding in person to various types of inspections and incidents (*e.g.*, oil spills, hazardous-substance responses), which require her to interact in the field with incident command, port partners, government safety personnel, and others. *Id.*; *see also* Ex. 6 at 40.

*BMCS.* Senior Chief Boatswain's Mate ("BMCS") is assigned to the Maritime Expeditionary Security Squadron TEN, which executes maritime expeditionary security missions and High Value Unit escorts along the United States' eastern coast and, when deployed, provides security, anti-terrorism, and force protection for significant high value assets and ports. *See* ECF No. 202-7, Decl. of Capt. Margaret E. C. Dean ("Dean Decl.") ¶¶ 1, 3. While on mission, BMCS serves as the sole coxswain on a 34-foot SeaArk Dauntless patrol craft, requiring him to be present aboard the craft and in close quarters with other personnel. *Id.* ¶ 4; *see also* Ex. 7 at 42.

As each Plaintiff's particular duty assignments and circumstances demonstrate, vaccination against COVID-19 would further the Coast Guard's compelling interest in preventing serious illness from infection, the need for hospitalization, and the possibility of death among service members, including Plaintiffs, who perform vital missions in close proximity to fellow airmen, shipmates, community partners, and the public. *See also* ECF No. 202-2, Decl. of Lt. Cdr. Joel A. Aber ("Aber Decl.") ¶ 11.

Moreover, the military's decisions to deny these Plaintiffs' religious accommodation requests are amply supported by evidence showing COVID-19's

19

harmful impact on military readiness. COVID-19 has "impacted all elements of DoD simultaneously," including exercises, deployments, redeployments, and other global force management activities, Ex. 1 ¶¶ 4, 6–8; caused the cancellation of numerous significant preparedness and readiness events, *id.* ¶ 9; suspended operations and resulted in inoperability of aircraft carriers for months in strategically significant areas, *id.* ¶ 7–8; and infected hundreds of thousands of service members, hospitalized thousands, and tragically caused the loss of 96 service members, *id.* ¶ 3. In the Coast Guard alone, COVID-19 has taken multiple entire units out of operation for weeks at a time. Aber Decl. ¶¶ 7–10. Over 8,216 Coast Guard members (out of a total of 46,448 active duty and reserve members) have been infected, resulting in significant lost days of time and readiness. *Id.* ¶ 7.

The military's judgment is also supported by the positive effects that COVID-19 vaccination has had on force readiness and health. Vaccinations have reduced the risk of serious illness, hospitalizations, and deaths of service members. *See e.g.*, Ex. 1 ¶¶ 16–18; Ex. 2, Decl. of Col. Tonya Rans ¶ 8, 11–12; *see also Church*, 573 F. Supp. 3d at 147 (requiring vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"); *Mark Short*, 2022 WL 1051852, at *7 (similar); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1265 (W.D. Okla. 2021) (stressing that the COVID-19 vaccine "has been shown to be remarkably effective in mitigating the effects of the pandemic which has affected . . . thousands of service members"). The overwhelming percentage of the service members who have died from COVID-19 were unvaccinated. Ex. 1 ¶ 3; Ex. 2 ¶ 12. Likewise, "[b]etween

July and November of 2021, non-fully-vaccinated active-duty service members had a 14.6-fold increased risk of being hospitalized when compared to fully vaccinated active-duty service members," and "[i]n December 2021 unvaccinated adults were 16-times more likely to be hospitalized than vaccinated adults." Ex. 1 ¶ 18. A recent study published by the CDC confirmed mRNA vaccine effectiveness against invasive mechanical ventilation or death during the Omicron-predominant period. *See* CDC, Morbidity and Mortality Weekly Report (Mar. 18, 2022), https://perma.cc/HJH3-PEN4. Vaccinations also reduced the number of service members required to quarantine, permitted the military to return to higher levels of occupancy in DoD facilities and to hold in-person training, and allowed service members to participate in joint training exercises with countries that have vaccination requirements. Ex. 1 ¶ 14. In short, "[g]iven the tangible protection the vaccines afford service members against serious illness, hospitalization, and death, it is clear that COVID-19 vaccines improve readiness and preserve the [military's] ability to accomplish its mission." *Id.* ¶ 22.

Vaccination also furthers the Coast Guard's "mission-critical" interest in ensuring that service members can respond to domestic emergencies or deploy on only a few days' or even a few hours' notice. Aber Decl. ¶¶ 5–6.[10] Because it takes individuals about one month following their first dose of the FDA-approved COVID-19 vaccine to become fully vaccinated, service members cannot put off vaccination

---

[10] In 2021, the Coast Guard deployed 4,461 members in response to surge staffing operations. Aber Decl. ¶ 5. The majority of personnel assigned to respond to domestic emergencies are from non-operational billets, because personnel assigned to operational assets are deemed critical to the execution of that asset's mission. *Id.*

until they are ordered to respond to an emergency. *Id.* ¶ 6. The vaccine is necessary for members to stay deployment-ready because a member's illness or an outbreak in a deployed environment "create an unacceptable risk to personnel and substantially increase the risk of mission failure." Govertsen Decl. ¶ 6. Deployed environments frequently do not have extensive medical facilities, such that a critically ill service member may not receive the same level of care they would receive in the United States and caring for that ill member may take away the unit's medical capacity to treat battle injuries. *See id.* Moreover, because deployments are "by design, minimally manned," "[i]f one service member were to get sick, contract long-COVID, get hospitalized, or die, that aircrew would be at risk of being unable to support the mission." *Id.*

ii.     **Vaccination is the least restrictive means of furthering Defendants' compelling interest in military readiness.**

As other courts have found in non-military settings, a uniform practice of vaccination is the least restrictive means for accomplishing the government's interest in preventing the spread of infectious diseases in the workforce.[11] This reasoning has even greater force in the military setting, where health of service members is paramount to military readiness, and where the acceptable level of risk to the mission must be a military, not judicial, judgment. *See Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (cautioning that a court may not "insert[] itself into the

---

[11] *See, e.g., Does 1–6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) (health-care workers); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (9th Cir. 2021) (students); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (health-care workers), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and cert. denied sub. nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021).

[military's] chain of command, overriding military commanders' professional military judgments"); *accord Mark Short*, 2022 WL 1051852, at *7 ("This deference is layered on top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties."); Ex. 9, *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) at 37–42.

After careful consideration of Plaintiffs' requests for a religious accommodation and their appeals, the final decision authority concluded that no lesser restrictive means sufficiently serve the Coast Guard's compelling interests in readiness and ensuring the health and safety of all service members equally well. Importantly, the Coast Guard is not required to use an alternative that does not serve its compelling interests "equally well" relative to vaccination. *See Burwell*, 573 U.S. at 731 (examining whether an alternative served stated interest "equally well"); *Kaemmerling v. Lappin*, 553 F.3d 669, 684–85 (D.C. Cir. 2008) (rejecting RFRA and constitutional challenges against DNA Act, where "[a]ny alternative method of identification would be *less effective*" in accomplishing the government's compelling interests (emphasis added)).

For example, the Coast Guard considered whether telework or remote work could provide a less restrictive alternative, but concluded that none of the Plaintiffs can complete their duties remotely. Pilot and LCDR Pilot, for instance, obviously cannot pilot an aircraft remotely. Govertsen Decl. ¶¶ 3–4; Coulter Decl. ¶¶ 3–4. Likewise, BMCS cannot perform the duties of a coxswain for a patrol craft remotely. Dean Decl. ¶¶ 3–4. And as Watch Captain, AET1 cannot lead a team executing

23

aircraft maintenance and launch preparations remotely, Phy Decl. ¶¶ 3–4, nor can MST3 conduct in-field inspections and incident responses remotely, Kahle Decl. ¶ 3.

The Coast Guard similarly evaluated the feasibility and effectiveness of masking and distancing but concluded that those measures are not as effective as vaccination. Social distancing is simply not possible on aircraft or boats, while conducting maintenance, or while working with various partners to conduct in-field inspections and incident responses. *See* Govertsen Decl. ¶¶ 3–4; Coulter Decl. ¶¶ 3–4, 8; Dean Decl. ¶¶ 3–4; Phy Decl. ¶¶ 3–4; *see also* Ex. 2 ¶ 10; Jones Decl. ¶ 27; Aber Decl. ¶ 4. Nor is masking possible on an aircraft, as they present a hindrance to clear communication. *See, e.g.*, Coulter Decl. ¶ 4. And regardless, unlike vaccination, masking and distancing do not provide any protection to an infected individual from severe illness or death. *See Roth*, 2022 WL 1568830, at *23. Also, unlike vaccination, the effectiveness of masking and distancing fluctuates based on human behavior. *See* Ex. 2 ¶ 10; *see also United States v. Elder*, --- F. Supp. 3d ---, 2022 WL 836923, at *9 (E.D.N.Y. Mar. 21, 2022) ("[F]ace masks, social distancing, and similar measures [alone] may be effective for small groups over short periods of time, but fail to ensure the safety of large groups in close contact for sustained periods.")

Similarly, testing and temperature checks do not prevent a service member who tests positive from suffering serious health outcomes, such as long COVID, hospitalization, and death. Also, the "virus can be easily transmitted to others prior to symptom development and therefore may infect significant numbers before being identified." Ex. 2 ¶ 10. Indeed, the military experienced multiple COVID-19 outbreaks

24

when it required service members to merely undergo routine testing requirements, rather than requiring vaccination. Ex. 1 ¶¶ 7–8; *see also Does 1-6*, 16 F.4th at 33.

### iii.   Plaintiffs' arguments in support of their claims are meritless.

Plaintiffs make no meaningful effort to dispel the Coast Guard's compelling interests in requiring their vaccination against COVID-19. Nor do they contend that any less restrictive means of achieving these interests exist, much less any means that are equally effective as vaccination. In fact, Plaintiffs submit no evidence or relevant argument bearing on whether the Coast Guard has complied with RFRA in requiring Plaintiffs to become vaccinated. They have thus failed to make a "*clear showing*" (or, for that matter, any showing) that their RFRA claims are likely to succeed on the merits. *See Mazurek*, 520 U.S. at 972 (citation omitted).

The upshot of Plaintiffs' arguments on the merits is that this Court's findings and conclusions regarding the Marines Corps's and Navy's religious-accommodations processes in *Colonel Financial Management Officer* and *Navy SEAL 1 v. Austin*, 586 F. Supp. 3d 1180 (M.D. Fla. Feb. 18, 2022), apply equally to the Coast Guard in this case. *See* Mot. at 8–13. Plaintiffs go so far as cutting and pasting lengthy passages from this Court's orders in *Colonel Financial Management Officer* and *Navy SEAL 1*, substituting the bracketed phrase "[Coast Guard]" for "Marine Corps." Mot. at 4–6, 8, 10–16. But these are mere assertions, divorced from any proof. Indeed, Plaintiffs fail to submit *any* evidence to substantiate their allegations regarding the Coast Guard's religious-accommodation process or its resolution of Plaintiffs' RARs. The Coast Guard has a distinct process for evaluating RARs, separate from the other services,

with its own initial and appellate decision authorities. And it is undisputed on this record that, contrary to Plaintiffs' unsupported assertions, the Coast Guard gave individualized consideration to each Plaintiff's RAR, employing RFRA's legal standards at each step. *See, e.g.*, Ex. 3 at 2–6 (Executive Summary of Pilot's appeal); Ex. 4 at 16–21 (Executive Summary of LCDR Pilot's appeal); Ex. 5 at 17–22 (Executive Summary of AET1's appeal); Ex. 6 at 16–19 (Executive Summary of MST3's appeal); Ex. 7 at 16–18 (Executive Summary of BMCS's appeal). Plaintiffs cannot rebut that evidence by simply reciting this Court's findings and conclusions about other military services based on different records.

Plaintiffs' reliance on a recent report by DoD's Acting Inspector General is similarly misplaced. *See* Mot. 8–13. That report says nothing about the Coast Guard, which is part of the Department of Homeland Security and thus outside the report's purview. Therefore, the Inspector General's findings simply have no relevance here.

In sum, the Coast Guard's considered judgment to require Plaintiffs to become vaccinated against COVID-19 is reasonable, supported by the record, and satisfies RFRA's requirements. Plaintiffs have thus failed to show likely success on their RFRA claims so as to warrant the extraordinary preliminary injunctive relief they seek.

## II.   **Plaintiffs are not likely to suffer irreparable harm absent preliminary relief.**

Merits aside, Plaintiffs have also failed to show that they are likely to suffer irreparable harm, "an indispensable prerequisite to a preliminary injunction." *See Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000). To constitute irreparable harm, an injury must be "real and immediate," not "conjectural or hypothetical," *Church v. City*

26

*of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994), and must be "of such *imminence* that there is a clear and present need for equitable relief," *Olu-Cole v. E.L. Haynes Publ. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (citation omitted); *accord Siegel*, 234 F.3d at 1176. A plaintiff cannot make a sufficient showing of irreparable harm based on "unsubstantiated and conclusory assertions," *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1134 (D.C. Cir. 2017), but must substantiate any claim with "independent proof, or no injunction may issue," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). And for "claims related to military personnel decisions," "the showing of irreparable harm must be especially strong before an injunction is warranted." *Shaw*, 539 F. Supp. 3d at 183; *Church*, 573 F. Supp. 3d at 145; *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012); *Guerra v. Scruggs*, 942 F.2d 270, 274 (4th Cir. 1991); *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985).

Plaintiffs claim that they face irreparable harm because they are being deprived of their statutorily protected religious rights. Mot. at 13. But as discussed, *supra* pp. 14–26, Plaintiffs have not demonstrated that Defendants' challenged actions implicate their rights under RFRA, let alone imminently threaten them, *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see also, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must at least show likely success on the merits); *Mark Short*, 2022 WL 1051852, at *9; *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017); *Thomas Short*, 2022 WL 1203876, at *7–8. A preliminary injunction is

inappropriate "unless the party seeking it can demonstrate that [his] interests are either threatened or in fact being impaired at the time relief is sought." *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) (citation omitted). And even if Plaintiffs could show likely success on their RFRA claims, the irreparable-harm requirement is not excised any time a plaintiff asserts a colorable RFRA claim. *See United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983) (explaining that a likelihood of success "does not obviate the necessity to show irreparable harm"); *accord Siegel*, 234 F.3d at 1176. Indeed, the mere "invocation of [RFRA] cannot substitute for" a plaintiff's obligation to show "the presence of an *imminent*, *non-speculative* irreparable injury" that will occur absent preliminary relief. *Google*, 822 F.3d at 228 (emphasis added); *see also Siegel*, 234 F.3d at 1177 (rejecting notion that "a violation of constitutional rights always constitutes irreparable harm"). But here, Plaintiffs offer no proof of harm to their religious rights. Rather, as with their merits arguments, their claim of irreparable harm rests entirely on this Court's prior conclusions made in different cases as to other military services. *See* Mot. at 13–14. That falls woefully short of their obligation to support with actual evidence their claim of irreparable harm. *Siegel*, 234 F.3d at 1179;

Further, Plaintiffs do not allege or attempt to demonstrate that they would suffer irreparable harm from any involuntary separation or discipline during this litigation. *See Lambert*, 695 F.2d at 540 ("[T]he harm considered . . . is necessarily confined to that which might occur" before a "trial on the merits."). But any suggestion of future discharge would be, at best, theoretical. It is still uncertain that any Plaintiff will be discharged for refusing vaccination, *supra* pp 7–10, let alone that any separation would

28

occur before this Court is able to issue a decision on the merits. And even if Plaintiffs did face imminent discharge, that would not cause them *irreparable* injury. *See Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *Air Force Off. v. Austin*, 588 F. Supp. 3d 1338, 1356 (M.D. Ga. 2022). Courts routinely find that administrative and disciplinary actions, including separation and a-less-than-honorable discharge, are not irreparable injuries because the member could later be reinstated and provided back pay if his claim prevails. *See McCurdy*, 359 F.2d at 493; *Hartikka*, 754 F.2d at 1518; *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church*, 573 F. Supp. 3d at 145–46; *Thomas Short*, 2022 WL 1203876, at *7–8.

## III.   The equities and the public interest weigh against a preliminary injunction.

The third and fourth requirements for a preliminary injunction's issuance—the balance of harms and whether the injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors tilt decidedly against the issuance of a preliminary injunction here.

The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 24–26, and the military has a compelling interest in requiring its forces to be vaccinated, healthy, and ready to accomplish any and every military mission, *see North Dakota v. United States*, 495 U.S. 423, 443 (1990); *Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). An injunction allowing Plaintiffs to continue serving without being vaccinated against COVID-19 would threaten harm not only to Plaintiffs and the other service members serving alongside them, but would also

29

compromise their units' collective abilities to execute their military and intelligence duties, maintain their necessary readiness, and accomplish their missions. *See* Aber Decl. ¶ 7 ("Coast Guard units are often small in size such that even a small number of cases can render a unit incapable of performing its mission."); Jones Decl. ¶ 28; Ex. 1 ¶ 21.[12] The Coast Guard's judgment that it cannot accept avoidable risk to the health and readiness of its fighting forces serves the public interest, outweighs any interests Plaintiffs may have in premature preliminary relief, and deserves this Court's deference. *See, e.g.*, *Navy SEAL 1*, 2022 WL 1294486, at *16–17; *Church*, 573 F. Supp. 3d at 146–48. The national defense also depends on service members' compliance with lawful orders. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). No military can function successfully where members feel free to define the terms of their own service and which orders they will choose to follow.[13] Plaintiffs' requested injunction would interfere with the military's discretion to handle matters of order and discipline, to the detriment of trust between commanding officer and subordinate. *Orloff*, 345 U.S. at 94–95.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a class-wide preliminary injunction.

---

[12] *See, e.g.*, *Qualls v. Rumsfeld*, 357 F. Supp. 274, 286 (D.D.C. 2005) ("In evaluating the harm to the [military], the court must consider the aggregate harm of all these possible claims."); *accord Bors v. Allen*, 607 F. Supp. 2d 204, 212 (D.D.C. 2009); *Guerra*, 942 F.2d at 275.

[13] *E.g.*, *Stein v. Mabus*, No. 3:12-cv-00816, 2013 WL 12092058, at *7–8 (S.D. Cal. Feb. 14, 2013) ("Military officers are better suited than civilian courts to determine" whether a service member's refusal to "follow all orders from" the Commander-in-Chief "disrupted good order and discipline." (citation omitted)).

Dated: November 1, 2022        Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/   Jody D. Lowenstein*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
LIAM HOLLAND
JODY D. LOWENSTEIN (MT #55816869)
JEREMY S.B. NEWMAN
CATHERINE M. YANG
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Counsel for Defendants*