## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **PILOT,** United States Coast Guard, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD AUSTIN,** in his official capacity as Secretary of the United States Department of Defense, *et al.*, <br><br> Defendants. | Case No. 8:22-cv-1278 (SDM/TGW) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## INTRODUCTION

Plaintiffs ask this Court to certify a class of:

> All persons on active duty or in reserve (1) who serve under the command of the Coast Guard, (2) who were affirmed by a chaplain as harboring a sincere religious objection, (3) who timely submitted an initial request for a religious accommodation, (4) who were denied the initial request, (5) who timely appealed the denial of the initial request, and (6) who were denied or will be denied after appeal.

Motion for Class Certification, Doc. No. 204, at 1-2 ("Mot.") (citation omitted).

Plaintiffs' proposed class fails to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Supreme Court has made clear that claims raised under the Religious Freedom Restoration Act ("RFRA") require an individualized assessment. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006). This highly individualized review means that these claims are not appropriate for class certification. The class members have different bases for their requested religious accommodations, different job positions and responsibilities, and

different potentially less restrictive means of achieving the Coast Guard's compelling governmental interest in maintaining a medically fit force ready for deployment at all times.

These distinctions, and the necessity of individualized inquiries to resolve putative class members' claims, mean that the claims do not present common questions that satisfy Rule 23(a)(2), Plaintiffs' claims are not typical of those of the class under Rule 23(a)(3), and common questions do not predominate over individualized questions under Rule 23(b)(3), nor would a class action be superior to individual actions under Rule 23(b)(3). Further, given the individualized consideration that the Coast Guard has given to religious accommodation requests ("RARs"), and the individualized injunctive and declaratory relief that Plaintiffs seek, Plaintiffs also fail to show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Finally, given that each Plaintiff's claims are subject to unique defenses and one Plaintiff is not even a member of the proposed class, Plaintiffs fail to meet the adequacy requirement of Rule 23(a)(4). Given that Plaintiffs fail to satisfy the requirements of Rule 23, they also do not qualify for their alternative requested relief of provisional class certification.

The thrust of Plaintiff's argument is that because this Court certified a similarly defined class of Marine Corps members in *Colonel Financial Management Officer v. Austin*, --- F. Supp. 3d ---, No. 8:22-cv-1275-SDM-TGW, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022), the Court should also certify this proposed class of Coast Guard

members. *See, e.g.*, Mot. 2 ("All material facts that were true of the Marines in the prior certification are equally true here, and the Coast Guard class should be certified in the same manner."). Plaintiffs go so far as cutting and pasting lengthy passages from this Court's opinion from *Colonel Financial Management Officer*, substituting the bracketed phrase "[Coast Guard]" for "Marine Corps." Mot. 1-2, 6, 7-8, 12-13, 16. But Plaintiffs cannot simply transpose the Court's conclusions regarding the Marine Corps onto the Coast Guard. The Coast Guard has a distinct process for evaluating RARs, with its own initial and appellate decision authorities. Plaintiffs have the burden of proving compliance with Rule 23's requirements, and they cannot carry their burden merely by citing this Court's conclusions about another military Service. The evidence shows that, contrary to Plaintiffs' unsupported arguments, the Coast Guard gives individualized consideration to each RAR in accordance with RFRA's legal standards.

For these reasons and others, the Court should deny Plaintiffs' motion for class certification.

## BACKGROUND

Defendants incorporate the background section in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI Opp."), submitted concurrently with this Memorandum.

## LEGAL STANDARD

Class actions are an exception to the ordinary course of American legal practice in which litigation is conducted only on behalf of named parties. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). A putative class representative may litigate the

class's claims only if he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *Id.* at 348-49 (citation omitted)). To be certified, a "putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.* 382 F.3d 1241, 1250 (11th Cir. 2004)). "Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id.* (quotation omitted).

"The party *seeking* class certification has the burden of proof. . . . All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). A court addressing a class certification motion does not "accept[] the allegations in the complaint as true and draw[] all inferences and present[] all evidence in the light most favorable to Plaintiffs." *Id.* at 1234 (quotations and citations omitted). "The party seeking class certification has a burden of *proof,* not a burden of pleading. He '"must affirmatively demonstrate his compliance" with Rule 23' by proving that the requirements are '*in fact*' satisfied." *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "This Court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *5 (M.D. Fla. Apr. 27, 2015); *see also*, *e.g.*, *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562

4

F. App'x 782, 790 (11th Cir. 2014) (vacating class certification where district court "failed to conduct the 'rigorous analysis' required" to determine whether common questions predominated over individualized questions); *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 F. App'x 550, 557-59 (6th Cir. 2003) (vacating class certification for district court's failure to conduct requisite "rigorous analysis" where plaintiffs alleged merely that entire putative class was subject to "unspoken policies, procedures and treatments" of gender discrimination).

## ARGUMENT

### I.    Plaintiffs Fail to Identify Common Issues to Advance Their RFRA Claims.

The highly individualized nature of religious accommodation claims, and the individualized consideration that the Coast Guard gives to each RAR, mean that the purported class will not share common questions sufficient to satisfy Rule 23(a)(2). Commonality under Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This requires not just the literal raising of "common 'questions[,]'" but also "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted). Plaintiffs must demonstrate not only that their claims depend on a "common contention," but that contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." *Id.*; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468

(2013). A proposed class "does not satisfy commonality" where "individualized proof will be required for each and every plaintiff," because such individualized proof "defeats the purpose of class certification." *Shamblin*, 2015 WL 1909765, at *7; *see also Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, No. 20-13588, 2021 WL 4427772, at *2 (11th Cir. Sept. 27, 2021) (rejecting commonality where "individualized inquiries would be required" for each class member). Commonality requires more than showing "merely that [class members] have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350.

Establishing commonality in a RFRA class action poses unique hurdles because RFRA "contemplate[s] an inquiry more focused than [a] categorical approach." *See Gonzales*, 546 U.S. at 430-31. Resolving a RFRA claim necessarily requires an individualized analysis of the particular burden on the individual's exercise of religion, the government's compelling interest in implementing a requirement, and the availability of less restrictive alternatives to each such application. *See id.*; *cf. Ramirez v. Collier*, 142 S. Ct. 1264, 1281 (2022) (holding that Religious Land Use and Institutionalized Persons Act, which applies RFRA's religious accommodation test in the prison setting, "requires that courts take cases one at a time"). RFRA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb–1(b)). Thus, the fact that many putative class members might raise a RFRA claim as to the same policy does not, in itself, establish

6

commonality. *See Wal-Mart*, 564 U.S. at 350.

Rather, in a discrimination-type case, the putative class must establish that the *reasons* for adverse treatment are the same for each putative class member. *See id.* at 352 (explaining that when plaintiffs "wish to sue about literally millions of employment decisions at once" under Title VII, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was*" each decision made). This standard applies both to Plaintiffs' RFRA claims and First Amendment claims. The Supreme Court in *Wal-Mart* explained that when a party seeks to certify a class concerning thousands of independent employment decisions under a theory of a pattern or practice of discrimination, it must either: (1) show that the employer "used a biased testing procedure" common to the whole proposed class, or (2) provide "[s]ignificant proof that an employer operated under a general policy of discrimination" that would apply to the class. *Id.* at 353.

Plaintiffs argue that commonality is established because "defendants 'operated under a general policy of discrimination.'" Mot. 5 (quoting *Wal-Mart*, 564 U.S. at 353). But Plaintiffs fail entirely to meet their burden of showing that Coast Guard operated under such a policy. Plaintiffs cite this Court's conclusion in *Colonel Financial Management Officer*, 2022 WL 3643512, at *11, that commonality was established for a Marine Corps class, based on this Court's finding that the Marine Corps exhibited systemic disregard of RFRA, *id.* at *10. Although Defendants respectfully disagree

with this Court's conclusions regarding the Marine Corps, they would not in any event show that the Coast Guard operated under a general policy of discrimination, where the Coast Guard set up a distinct process with different initial and appellate decision authorities from the Marine Corps. *See generally* Decl. of Rear Adm. Eric C. Jones ¶¶ 21-37, Doc. 202-1 (describing Coast Guard's process for considering RARs). And Plaintiffs themselves offer no evidence of such a policy, citing only their unproven allegations. *See* Mot. 6 (citing Third Am. Compl. ¶¶ 177-216 & Prayer for Relief, ¶¶ A-B, Doc. 198). At the class certification stage, a court does not "accept[] the allegations in the complaint as true" because "[t]he party seeking class certification has a burden of *proof,* not a burden of pleading[,]" under which "[h]e must affirmatively demonstrate his compliance with Rule 23 by proving that the requirements are *in fact* satisfied." *Brown*, 817 F.3d at 1234 (citations omitted).

Furthermore, the evidence before the Court shows that, far from having a generalized policy of disregarding RFRA, the Coast Guard gives each RAR individualized consideration in accordance with RFRA's standards. *See generally* PI Opp. 14–26. The Coast Guard's process involves many steps in which a member's RAR is considered by a medical officer, a chaplain, the officers in the member's chain of command, multiple individuals within the Coast Guard's Office of Health Services and Office of Military Personnel Policy's Military Policy Development Division, attorneys in the Office of General Law, the Office of Military Personnel Policy (the initial decision authority), and the Director of Military Personnel or his delegee (the

appellate decision authority). Jones Decl. ¶¶ 30-35. Each of these individuals involved in the process consider the member's specific circumstances, such as

> "the nature and sincerity of the religious belief, the extent to which the vaccine requirement burdens that belief, the impact of an accommodation on the Coast Guard's compelling need for a healthy military force capable of fulfilling its statutory missions, and whether there are less restrictive means available to the individual and their unit to meet that compelling interest."

*Id.* ¶ 24.

While most RARs have been denied, that reflects that the Coast Guard has a compelling interest in protecting the health and readiness of its force, and that most Coast Guard members work in close proximity to others where masking, social distancing, and telework are unavailable or would have limited effectiveness in mitigating the risks of COVID-19. *See id.* ¶¶ 26-28; Decl. of Lieutenant Commander Joel A. Aber ¶¶ 3-11, Doc. 202-2. However, not all RARs have been denied: as of October 26, 2022, 12 RARs or appeals have been granted, PI Opp. Ex. 10, Decl. of Commander Brooke Grant, Ex. 1, which belies the notion that the Coast Guard has a uniform policy of denying all RARs. Furthermore, the named Plaintiffs' RAR packages exemplify the individualized consideration that each member receives. *See generally* PI Opp. Ex. 3 (RAR package for Plaintiff Pilot); PI Opp. Ex. 4 (RAR package for Plaintiff LCDR Pilot); PI Opp. Ex. 5 (RAR package for Plaintiff AET1); PI Opp. Ex. 6 (RAR package for Plaintiff MST3); PI Opp. Ex. 7 (RAR package for Plaintiff BMCS).

To evaluate whether the denial of a RAR to any particular service member was lawful, it would be necessary to examine that service member's RAR package to

determine whether the Service at issue correctly determined that "the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb–1(b)). With "no common evidence capable of showing a uniform classwide defect[,]" the necessity to engage in "individualized inquiries" shows that Plaintiffs "have not met their burden under Rule 23(a)(2) of demonstrating that there are questions of fact or law common to the class that have the capacity to 'generate common *answers*' and are 'capable of classwide resolution.'" *Ohio State Troopers Ass'n*, 2021 WL 4427772, at *2 (quoting *Wal-Mart*, 564 U.S. at 350).

## II.   Plaintiffs Fail to Demonstrate that Their Claims Are Typical of the Class.

Rule 23(a)(3) "require[s] that 'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.'" *Vega*, 564 F.3d at 1275 (quoting Fed. R. Civ. P. 23(a)(3)). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (quoting *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008)).

Plaintiffs have not shown that their claims are typical of other service members' claims, especially given the unique exhaustion defenses applicable to the named Plaintiffs. As noted, *supra* pp. 6-10, a detailed examination of each service member's

particular circumstances is essential for assessing a RFRA claim. Factual differences concerning each service member's religious beliefs, burden to religious exercise from vaccination, and availability of potential accommodations are material to resolving potential class members' RFRA claims, which require "scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants," *Ali v. Stephens*, 822 F.3d 776, 785-86 (5th Cir. 2016) (quotation omitted). The need to "look to such individualized factors" defeats typicality. *Vega*, 564 F.3d at 1276; *see also Truesdell v. Thomas*, 889 F.3d 719, 726 (11th Cir. 2018) (need to conduct "mini-trials" of each class member's circumstances defeats typicality). As one district court explained in rejecting a RFRA class action, "[a]nalyzing individualized factors to determine the parameters of individual claims is the antithesis of typicality." *Lindh v. Dir., Fed. Bureau of Prisons*, No. 2:14-cv-151-JMS-WGH, 2015 WL 179793, at *6 (S.D. Ind. Jan. 14, 2015).

Plaintiffs again rely on *Colonel Financial Management Officer*'s finding that Marine Corps service members' claims were typical of a Marine Corps class, but that case is distinguishable. The Court concluded that "[w]ith respect to the 'particular issue' of the Marine Corps's failure to conduct the analysis required by RFRA, the named plaintiffs are typical[,]" 2022 WL 3643512, at *12, based on its finding of "a systemic deficiency manifesting the organized disregard of RFRA[,]" *id.* at *10.[1] But Plaintiffs have not shown that any systemic deficiency exists in the Coast Guard's adherence to RFRA.

---

[1] As noted, Defendants respectfully disagree with this Court's analysis of the Marine Corps's consideration of RARs.

Plaintiffs' claims are also not typical of the class's because they are subject to "unique defense[s]." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (collecting authorities). As explained in Defendants' Opposition to Preliminary Injunction, pp. 5-14, none of the named plaintiffs has fully exhausted their intramilitary remedies, rendering their claims distinctly unripe and nonjusticiable—and thus not a fair representation of other service members who fully pursue administrative remedies.

In addition, Plaintiff Lieutenant 2's claims are not typical because she is not a member of the proposed class. She has not and will not have an RAR appeal denied because she resigned from the Coast Guard while her RAR appeal was pending.  *See* Gunning Decl. ¶¶ 6-7, Doc. No. 202-8. Because "[s]he is not a member of" this class, her "claim is a fortiori not typical of [class members'] claims." *Machella v. Cardenas*, 653 F.2d 923, 926 (5th Cir. Unit A Aug. 1981).

## III.   Plaintiffs Are Not Adequate Representatives of the Proposed Class.

Plaintiffs fail the requirement that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This rule is particularly important in classes certified under Rule 23(b)(2), as Plaintiffs propose, because such classes are mandatory—any and every person within the class will be bound by this Court's judgment without the opportunity to opt out, either before or after judgment.  *See, e.g.*, *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) ("[T]he existence of a class fundamentally alters the rights of present and absent members, particularly for mandatory classes such as the one here.").

12

Plaintiff Lieutenant 2 is clearly not an adequate representative because she is not a member of the class. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (quotation omitted). She resigned from the Coast Guard while her RAR appeal was pending, Gunning Decl. ¶¶ 6-7, Doc. No. 202-8, so she is not someone whose claim "w[as] denied or will be denied after appeal[;]" Mot. 2 (citation omitted).[2]

Second, the remaining proposed class representatives are not adequate because they are subject to "unique defenses," which "bear on . . . the . . . adequacy of a class representative." *Beck*, 457 F.3d at 296. As explained in Defendants' Opposition to Preliminary Injunction, none of the Plaintiffs have been discharged, and they all have intraservice remedies available to them; therefore, they are subject to unique defenses of lack of ripeness and failure to exhaust administrative remedies. PI Opp. 5-14.

## IV.    Plaintiffs Fail to Satisfy the Requirements of Rule 23(b).

Plaintiffs seek to certify this class under either Rule 23(b)(2) or Rule 23(b)(3), but they fail to satisfy the requirements of either subsection.

---

[2] Plaintiffs' counsel have shown confusion about Plaintiff Lieutenant 2's identity throughout this action. Plaintiffs' operative complaint alleges that Lieutenant 2 is a man domiciled in Clearwater, Florida. Third Am. Compl. ¶ 26. But when Plaintiffs' counsel disclosed Plaintiffs' identity to Defendants on a confidential basis, they disclosed Lieutenant 2's identity as a woman domiciled in Corpus Christi, Texas. In their class certification motion, Plaintiffs' counsel put forward yet another identity for Lieutenant 2, a woman domiciled in Clearwater, Florida. Mot. 3. The Gunning Declaration, Doc. No. 202-8, describes the facts concerning the woman that Plaintiffs' counsel confidentially identified to Defendants as Plaintiff Lieutenant 2.

### A.     Plaintiffs Fail to Satisfy the Requirements of Rule 23(b)(2).

Plaintiffs seek to certify a class under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is permissible "only when a single injunction . . . would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Plaintiffs' requested relief "must be specific," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007), to be applicable to the entire class, *Yates v. Collier*, 868 F.3d 354, 366-67 (5th Cir. 2017). As explained, *supra* pp. 6-7, RFRA requires individually analyzing a policy's alleged burden on a specific person's exercise of religion, the government's compelling interest in implementing the challenged policy to that person, and the availability of less restrictive and equally effective alternatives. Just as the need to resolve such questions individually precludes any finding of commonality or typicality, it likewise precludes any finding that the claims of more than 1,000 Coast Guard service members could be adjudicated en masse under Rule 23(b)(2). A class "alleg[ing] individual injuries that are not uniform across the class[] . . . lacks cohesiveness to proceed as a 23(b)(2) class." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012); *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998) (explaining that need for "specific . . . inquiry into the varying circumstances and merits of each class member's individual case" likely precludes class certification under Rule 23(b)(2)).

14

In *Wal-Mart v. Dukes*, for example, plaintiffs claimed that Wal-Mart harmed them in essentially the same way by repeatedly violating Title VII's prohibition on sex discrimination, but the Supreme Court held that those claims were not suitable for certification under Rule 23(b)(2) because the success of each plaintiff's Title VII claim depended on the specific circumstances surrounding each employment action. 564 U.S. at 366. *Wal-Mart*'s reasoning with respect to the individualized nature of Title VII claims applies with at least equal force to plaintiffs' wide-ranging RFRA claims, which depend on diverse factual circumstances peculiar to each service member.

Even if the merits of every class member's RFRA claim could be adjudicated "in one stroke," *Id.* at 350, RFRA would entitle each person to individualized relief, depending on military assignment, deployment status, and responsibilities. Indeed, other Coast Guard service members have sought to vindicate their own interests by separately litigating claims in other courts (also on behalf of purported, overlapping classes of Coast Guard service members). *See Bazzrea v. Mayorkas*, No. 3:22-cv-265 (S.D. Tex. filed July 25, 2022); *Jackson v. Mayorkas*, No. 4:22-cv-0825-P (N.D. Tex. instituted Sept. 16, 2022). But a class certification here would render those other suits essentially meaningless given that a Rule 23(b)(2) class "provides for binding litigation on all class members[,]" *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000). Indeed, class members would equally be bound by an adverse ruling on a class-wide basis, barring certain service members' otherwise meritorious claims. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820-21 (7th Cir. 2011); *United States v. U.S. Steel Corp.*, 520 F.2d 1043, 1048 (5th Cir. 1975) (requiring "careful[]" consideration of

23(b)(2) class certification because "of the consequences of binding such a group to a final judgment"). Class certification here thus seeks to foreclose the right of litigants in other cases to pursue their own individual relief, to improperly limit the government's ability to present an individualized defense in distinct cases, and to frustrate the proper role of other courts in the federal judicial system to decide plainly individual claims.

Plaintiffs again rely heavily on *Colonel Financial Management Officer*, but in that case, this Court concluded that plaintiffs satisfied Rule 23(b)(2)'s requirement that defendants "must have acted or failed to act on grounds that apply generally to the class," because the Court concluded "that the Marine Corps is subject to a systemic deficiency manifesting the organized disregard of RFRA." 2022 WL 3643512, at *9-10.[3] But here, as noted above, the Coast Guard individually considered each RAR based on the specific facts and in accordance with RFRA's legal standards, and Plaintiffs offer no evidence to the contrary. *See supra*, pp. 8-9. Accordingly, this is not a case in which Defendants "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2).

### B.  Plaintiffs Fail to Satisfy the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

---

[3] Again, Defendants respectfully disagree with this conclusion.

controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs meet neither the predominance requirement nor the superiority requirement.

The predominance requirement is "similar" to Rule 23(a)(2)'s commonality requirement but "more demanding." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 481 F. Supp. 3d 1258, 1282 (S.D. Fla. 2020) (quoting *Vega*, 564 F.3d at 1270), *aff'd*, No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021). Where a lawsuit has "insufficient commonality of issues for Rule 23(a)(2) purposes, *a fortiori* . . . such issues do not predominate in the case for 23(b)(3) purposes." *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 530 (D. Md. 2001). Where resolution of class members' claims requires consideration of "significant individualized issues," then common questions do not predominate. *Vega*, 564 F.3d at 1274.

As explained above, Plaintiffs' RFRA claims require resolution of the individualized issues of the nature and sincerity of the service member's religious beliefs, the burden on the service member's religious exercise from vaccination, and whether requiring vaccination would be the least restrictive means of advancing the Coast Guard's compelling interest in force health and readiness in light of the service member's particular circumstances. *See supra*, pp. 6-10. Even if the Court were to conclude, contrary to Defendants' arguments, that common questions sufficient to satisfy Rule 23(a)(2) exist, such common questions would not predominate over individualized questions.

The fact-specific nature of RFRA claims also shows that a class action would not be superior to individualized resolution of claims. RFRA precludes a "categorical

approach" and instead "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb–1(b)). Yet a class action would preclude application of RFRA's test to each service member, and instead would require evaluating the class members' claims with a categorical approach. Given RFRA's requirement of individualized consideration, individual actions are superior to a class action.

## V.    The Court Should Not Provisionally Certify a Class.

Plaintiffs ask this Court to provisionally certify a class for purposes of entering a preliminary injunction, in the alternative to full certification. Mot. 16. While courts can provisionally certify classes at the preliminary injunction stage, such provisional certification still requires satisfaction of the requirements of Rule 23. *See Teahl v. Lazy Flamingo, Inc.*, No. 2:13-cv-833-FTM-38CM, 2015 WL 179367, at *1 (M.D. Fla. Jan. 14, 2015) (in deciding motion seeking "provisional certification," concluding that "the party seeking certification must have standing and meet each requirement under Rule 23(a) and at least one subsection of Rule 23(b) at the time of certification"); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179-80 (D.D.C. 2015) ("Plaintiffs, however, seek only *provisional* class certification at this juncture. In granting such provisional certification,

18

the Court must still satisfy itself that the requirements of Rule 23 have been met.").[4]

Here, for the reasons explained above, Plaintiffs fail to satisfy several requirements of Rule 23. *See supra*, Parts I-IV. Therefore, it would be inappropriate for this Court to certify a class, provisionally or fully.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

Dated: November 1, 2022          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/   Jody D. Lowenstein*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
LIAM HOLLAND
JODY D. LOWENSTEIN (MT #55816869)
JEREMY S.B. NEWMAN
CATHERINE M. YANG
Trial Attorneys

---

[4] In all but one case cited by Plaintiffs concerning provisional certification, the court granted provisional certification only after concluding that plaintiffs satisfied the requirements of Rule 23. *See*, *e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) ("the district court acted within its discretion when it ruled that Meyer met the commonality, typicality, and adequacy requirements of FRCP 23(a) and did not abuse its discretion by granting provisional class certification"). The only exception is *Thomas v. Johnston*, in which the court "conditionally certifie[d] a class[.]" 557 F. Supp. 879, 916 n.29 (W.D. Tex. 1983). Since then, Rule 23 was amended to delete a provision allowing conditional certification. *See* Fed. R. Civ. P. 23 advisory committee's note to 2003 Amendment ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Counsel for Defendants*